The STATE of Ohio, Appellee,

v.

ROBLES, Appellant.

[Cite as *State v. Robles* (1989), 65 Ohio App.3d 104.]

Court of Appeals of Ohio,
Sandusky County.

No. S–88–26.

Decided Oct. 20, 1989.

*John E. Meyers,* Prosecuting Attorney, and *Ronald J. Mayle,* Assistant Prosecuting Attorney, for appellee.

*Robert G. Hart,* for appellant.

ABOOD, Judge.

This is an appeal of a judgment of conviction in the Sandusky County Court of Common Pleas following a jury verdict of guilty on one count of aggravated murder in violation of R.C. 2903.01(A).

Defendant-appellant, Robert M. Robles, sets forth three assignments of error:

"1. The trial court committed error prejudicial to the appellant by continuing the trial with an alternate juror over the objection of the appellant where the original juror's absence was not due to any incapacity or other inability on the part of the juror.

"2. The trial court committed error prejudicial to the appellant by denying his motion to exclude the opinion of the state's expert witness as to the probability that the blood found in and on the car came from someone other than the victim, where the expert did not have personal knowledge of the data underlying his opinion and the data was not admitted into evidence as required by Rule 703 of the Ohio Rules of Evidence.

"3. The trial court erred prejudicial to appellant in denying his motion to sever his trial from that of the co-defendant where the trial court set a certain date for appellant to argue in support of his motion, but summarily denied the motion prior to such date, and where the trial court did not, prior to its order, order the prosecuting attorney to deliver to the court for inspection any statements or confessions made by the defendants which the state intended to introduce at trial."

The undisputed facts giving rise to this appeal are as follows. At approximately 7:15 a.m. on February 9, 1988, Mary Ellen Cooley, a bus driver employed by the Fremont Board of Education, spotted a body dressed only in jeans and shoes lying face down in the snow on the side of County Road 211 in Sandusky Township. Cooley immediately radioed her supervisor and remained at the scene until a deputy sheriff and other officers arrived. The officers secured the area until detectives arrived to examine and document the scene and collect evidence. The victim, subsequently identified as Leroy Stout, had been fatally stabbed in the chest. He also had stab wounds in his neck and back and numerous incised wounds on his chest, neck, back and face. On his back the letters "DMC" had been carved into the skin. During the investigation, it was discovered that Robert Robles and Mary Laird had been seen with the victim the night before and earlier that morning. Later that same day, detectives located Robles at an auto parts junkyard working on a brown Torino on which the detectives discovered blood stains. Robles was arrested, and the car was impounded and held as evidence. Thereafter, the

detectives obtained a search warrant for Mary Laird's residence where both she and Robles resided with her two children. Numerous items were seized as evidence and, approximately three days later, Laird was arrested. On February 12, 1988, separate indictments were returned by the Sandusky County Grand Jury against both Robles and Laird. Each was indicted on one count of aggravated murder in violation of R.C. 2903.01(A) and a second count of aggravated murder in violation of R.C. 2903.01(B). Both defendants entered not guilty pleas. Discovery was conducted and, on May 25, 1988, the trial court ordered that the two indictments be joined together for trial. The joint jury trial began June 6, 1988, and the jury returned its verdict finding both defendants guilty on Count I and not guilty on Count II of the indictments. On June 13, 1988, judgment was entered accordingly and, on June 16, 1988, both defendants were sentenced to life imprisonment.

I

■ The court will consider first appellant's second assignment of error, wherein appellant asserts that the trial court committed prejudicial error in allowing the opinion testimony of appellee's expert where the expert did not have personal knowledge of the data underlying his opinion and that data was not admitted into evidence as required by Evid.R. 703. Specifically, appellant argues that the testimony of prosecution witness, William Wilson, regarding the percentage of the population having the same type of blood as the victim and as the blood found on certain pieces of evidence, was based upon statistics from an FBI report which was never admitted into evidence. Appellant also argues that the testimony should not have been admitted due to the date of the statistics relied upon and the availability of more current statistics. Finally, appellant argues that State's Exhibit 29 was inadmissible hearsay. Appellee argues that appellant made no objection at trial on the basis of Evid.R. 703 and, therefore, that objection was waived. Appellee argues further that Wilson's testimony was properly admitted and that the statistics used are a proper subject for judicial notice and use at trial.

Evid.R. 703 provides:

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing."

Ohio courts, citing Evid.R. 703, hold that opinion testimony by an expert witness must be based upon facts within that witness's own personal knowledge or upon facts shown by the evidence. See *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317; *State v. Jones* (1984), 9 Ohio St.3d 123, 9 OBR 347, 459 N.E.2d 526.

The evidence which is the subject of this assignment of error was the trial testimony of William Wilson, who, at the time of trial, was employed by the Bureau of Criminal Investigation and Identification in Fremont, Ohio. Part of Wilson's responsibilities in that position was the analysis of evidence, specifically blood and other serological testing. Wilson testified that for this case he tested blood samples from the victim and both defendants to determine the blood type and enzyme phenol type to distinguish between them. Wilson then ran the same tests on the blood samples taken from certain pieces of evidence gathered in the case, including the impounded automobile and the sweatshirt identified as belonging to the victim. Wilson also ran the tests based on blood samples taken from spots of blood near the victim. From these tests, Wilson testified that he could definitely eliminate both Robles and appellant Laird as sources of the blood found near the body and on the car based upon their enzyme compositions. Wilson then testified as to the statistics of blood and enzyme types for the general population compiled by the FBI based upon population surveys conducted, from which it determined a breakdown according to the percentage of each type existing in the population. Wilson testified that these FBI studies are updated every three months, but that he himself uses statistics from the 1982 study to formulate his conclusions as to population frequency. At this point in Wilson's testimony the following proceedings were conducted outside the hearing of the jury:

"MR. COOPER: The defense has entered an objection to this witness's testimony on two grounds. The first is that his testimony is that he is basing his opinion on 1982 statistics in spite of the fact that he testified that the FBI issues quarterly bulletins updating those figures.

"MR. MEYERS: I disagree with that premise.

"MR. COOPER: That's my objection.

"MR. MEYERS: Okay.

"MR. COOPER: Secondly, that he is testifying concerning conclusions that have been drawn by 'the FBI,' and without any personal knowledge apparently of the studies that were done. He has testified that as far as he knows hundreds maybe even thousands of people. My objection is that for him to testify relative to that is hearsay. The Court has overruled us.

"THE COURT: Overruled."

Thereafter, Wilson referred to a single sheet of paper, designated State's Exhibit 29, which he testified contained population frequencies taken from such an FBI study dated July 1, 1982. Using these statistics, Wilson testified that he could determine the population frequencies of the samples of blood tested. Wilson testified that having already eliminated Robles and appellant

Laird as possible sources of the blood found on certain pieces of evidence, he proceeded to use the statistics contained in Exhibit 29 to estimate the percentage of the population with the same combination of enzyme factors found in the victim's blood. Wilson concluded that these factors could be found in only 1.8 percent of the population or one out of fifty-five people. Wilson testified further that the blood samples taken from the car, the sweatshirt and near the body contained the same combination of enzyme factors as the victim's blood.

At the close of the state's case, the following proceedings took place with respect to State's Exhibit 29:

"Your Honor, we move the admission of all the State's Exhibits, 1 through 32.

"* * * *

"MR. COOPER: 29 is the population frequency of July '82. I object to those.

"MR. STIERWALT: Object also.

"MR. COOPER: I am objecting to 29. Same argument I made before. It's 1982 statistics.

"THE COURT: Okay. That's the basis of your argument?

"MR. COOPER: Yes.

"THE COURT: Overruled."

As set forth above, Evid.R. 703 and case law require that an expert witness base his opinion upon either personal knowledge or facts in evidence. Here, however, Wilson was permitted over appellant's objection to state conclusions which he claimed were based in part upon population statistics contained in reports compiled by the FBI. These reports, however, were never produced at trial. Instead, Wilson referred to State's Exhibit 29, a single sheet of paper which contained several typewritten tables. Wilson testified that this information was taken from an FBI report dated July 1, 1982; however, the exhibit itself was not even offered into evidence until the close of the state's case, at which point appellant objected to its introduction.

It is clear from the record that Wilson's conclusions were based in part upon facts that were not within his personal knowledge or in evidence as required by Evid.R. 703 and Ohio case law. Specifically, at the time Wilson testified as to his conclusions, the statistics relied upon were not in evidence. Although Exhibit 29 was admitted at the conclusion of the state's case, the sequence of events is not the only problem. While the trial court in overruling appellant's objection to the admission of Exhibit 29 failed to indicate the hearsay exception under which it was permitting its admission, the only possible exception

under which State's Exhibit 29 could have been admitted is Evid.R. 803(8), which provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

" * * *

"(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

Under this exception, however, authentication or identification of the document as a public record or report is still required. Evid.R. 901. While such evidence can be self-authenticating, it is necessary that the report or record itself be offered into evidence and that it contain, on its face, authenticating and identifying information. See Evid.R. 902. Here, the specific FBI report containing the statistics used by Wilson in formulating his conclusion was never produced by Wilson or offered into evidence. Rather, what was offered was State's Exhibit 29, which Wilson claimed set forth statistics taken from an FBI report. Exhibit 29, however, does not fall into any category of self-authenticating documents and, therefore, necessarily requires proper authentication and identification as a prerequisite to its admission into evidence as a public record exception to the hearsay rule. After reviewing Wilson's testimony concerning the source and content of State's Exhibit 29, it is clear that appellee failed to lay a sufficient foundation for its admission into evidence and that there was not sufficient evidence in the record to support a finding that the contents thereof were what they were professed to be. Therefore, we hold that Exhibit 29 constituted inadmissible hearsay and that the trial court erred in admitting it into evidence and allowing Wilson to testify based upon the statistics contained therein.

■ Having made this holding, the court must still determine whether this error was prejudicial to appellant Robles. In addressing whether an erroneous admission of evidence is harmless or prejudicial error, the reviewing court must consider the entire record, without the disputed evidence, and determine whether there was a reasonable possibility that the evidence contributed to the guilty verdict. *State v. Cowans* (1967), 10 Ohio St.2d 96, 39 O.O.2d 97, 227 N.E.2d 201; *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623.

Considering all of the evidence in the record, and specifically excluding from consideration the disputed testimony of Wilson, we do not find that there was substantial evidence in the record upon which the jury could render the same verdict. We therefore conclude that the trial court's erroneous admission of State's Exhibit 29 and Wilson's testimony that was based on that exhibit was prejudicial to appellant. Accordingly, appellant's second assignment of error is found well taken.

## III

The court will consider next appellant's first assignment of error, wherein he asserts that the trial court committed prejudicial error by continuing the trial with an alternate juror over appellant's objection where the original juror's absence was not due to any incapacity or other inability on the part of the juror. Although this assignment of error is rendered moot by our finding above, we will consider it briefly.

The replacement of a juror with an alternate juror prior to deliberation is within the sound discretion of the trial court, and absent a showing that the trial court abused its discretion this court will presume regularity. *State v. Hopkins* (1985), 27 Ohio App.3d 196, 27 OBR 235, 500 N.E.2d 323.

It is clear from the record that the trial court's substitution of a juror was largely due to the court's own actions. Although we do not find the trial court's action in this case entirely appropriate, the alternate juror was duly qualified, subject to *voir dire* and accepted by all counsel. Therefore, we cannot say that the trial court abused its discretion in replacing the absent juror with an alternate. Accordingly, appellant's first assignment of error is found not well taken.

## IV

Finally, the court will consider appellant's third assignment of error, wherein he asserts that the trial court erred in denying his motion to sever his trial from that of the codefendant Laird. Again, although this assignment of error is rendered moot by our finding above, we will consider it briefly.

Crim.R. 14 provides, in relevant part:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting

attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

Whether an accused shall be tried separately is a matter within the discretion of the trial court. *State v. Abbott* (1949), 152 Ohio St. 228, 40 O.O. 282, 89 N.E.2d 147. The burden was upon defendant Robles to show good cause why the separate trial should be granted and that the trial court abused its discretion in refusing to do so. *State v. Perod* (1968), 15 Ohio App.2d 115, 44 O.O.2d 249, 239 N.E.2d 100. Further, a defendant asserting that joinder is improper must make an affirmative showing that his rights will be prejudiced. *State v. Roberts* (1980), 62 Ohio St.2d 170, 175, 16 O.O.3d 201, 204, 405 N.E.2d 247, 251. A review of the record indicates that on April 20, 1988, counsel for appellant Robles filed a motion for separate trials for the reason that he anticipated different issues would arise. On April 26, 1988, a hearing was held to consider this motion to sever along with other motions. At the hearing, counsel for appellant indicated that a potential alibi defense might require separate trials but that he was not ready to proceed on his motion. The trial court gave appellant leave to file a motion to sever until May 27, 1988. On May 25, 1988, the trial court ordered that the indictments of Robles and Laird be joined for trial pursuant to Crim.R. 13. At no time prior to trial or during trial was appellant's motion for separate trials renewed.

Based upon our review of the record, we find that appellant failed to demonstrate prior to trial that good cause existed requiring separate trials. Although the trial court did order joinder several days prior to the motion cutoff date, at no time thereafter did appellant move the court to permit him to file a motion for separate trials based upon an alibi defense or to renew his original motion based upon different issues to be addressed. Further, appellant failed to raise the issue at the close of appellee's case in order to demonstrate that his rights had actually been prejudiced by the joinder. Accordingly, appellant's third assignment of error is found not well taken.

On consideration whereof, the court finds that the defendant was prejudiced and prevented from having a fair trial, and judgment of the Sandusky County Court of Common Pleas is therefore reversed. This cause is remanded to that court for a new trial. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed.*

HANDWORK, P.J., and GLASSER, J., concur.