[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This case is before the court on appeal from the Sandusky County Court of Common Pleas. That court sentenced appellant to serve four years of incarceration after a jury found him guilty of one count of complicity to commit felonious assault in violation of R.C. 2903.11(A)(1). Appellant asserts the following assignments of error:
 "I. WHEREAS, THE TRIAL COURT REVERSIBLY ERRED, TO THE HARMFUL PREJUDICE OF THE DEFENDANT APPELLANT, IN DENYING THE DEFENDANT-APPELLANT'S MOTION FOR A SEPARATION OF TRIALS, THEREBY VIOLATING THE DEFENDANT APPELLANT'S FUNDAMENTAL CONSTITUTIONAL RIGHT TO CONFRONTATION OF WITNESSES, AS GUARANTEED BY THE SIXTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES, APPLICABLE TO THE STATES THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
 "II. WHEREAS, THE TRIAL COURT ABUSED ITS DISCRETION, WHEN IT DENIED THE DEFENDANT-APPELLANT AN OPPORTUNITY TO REVIEW THE WRIT TEN POLICE REPORT OF STATE'S WITNESS, DET. SEAN O'CONNELL, WHEN SAID WRITTEN POLICE REPORT WAS USED BY SAID STATE'S WITNESS TO REFRESH HIS MEMORY DURING HIS TESTIMONY. SUCH AN ABUSE OF DISCRETION WAS HARMFULLY PREJUDICIAL, IN VIOLATING THE DISCOVERY PRO VISIONS OF CRIM. R. 16(B)(1)(c)(f) (g), AND IN VIOLATING EVID. R. 612, THEREBY DENYING THE DEFENDANT-APPELLANT'S FUNDAMENTAL CONSTITUTIONAL RIGHTS TO A FAIR AND IMPARTIAL JURY TRIAL AND TO DUE PROCESS OF LAW, AS GUARANTEED BY THE SIXTH AMENDMENT AND FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES.
 "III. WHEREAS, THE TRIAL COURT REVERSIBLY ERRED, WHEN IT FAILED TO EXCISE AND PRESERVE, IN THE RECORD OF THIS CASE, THE WRITTEN POLICE REPORT OF STATE'S WITNESS, DET. SEAN O'CONNELL, USED TO REFRESH THE MEMORY OF SAID STATE'S WITNESS, AFTER THE TRIAL COURT HAD DENIED THE AVAILABILITY OF REVIEW OF SAME, TO DEFENSE COUNSEL, THEREBY VIOLATING CRIM. R. (B)(1)(c)(f) (g), AND VIOLATING EVID. R. 612.
On July 6, 1996, at approximately 1:45 a.m., a man was found badly beaten and unconscious in an alley in Fremont, Ohio. His shoes were off his feet, and his shirt pocket was torn. When he awoke from a coma ten days later, he could not recall any details about the beating or his assailants.
The victim had cashed his paycheck at a bar early on the morning of July 5, 1996 after completing work on a third shift. He and two co-workers spent the remainder of the day drinking beer at several locations. After leaving a party, the three drove to a tavern in Fremont. One of the co-workers testified they arrived at the tavern at approximately 11:45 p.m., July 5, 1996. The victim decided to use a nearby "port-a-potty" while his two companions went into the tavern.
When the victim never came to the bar, his co-workers began looking for him. They could not find him and returned home. The next day, they learned he had been hospitalized.
The Fremont police investigated the beating by canvassing the neighborhood where the victim was found. The police learned a "white man" had come to the door of a house approximately one hundred feet from where the victim was found while the occupants were having a fish fry.
People at the house gave statements to a Fremont detective. The witnesses indicated that appellant and his two co-defendants, who were all black, had chased a "white man" down the block and returned with cash. As a result of the investigation, all three, appellant, Daryl Walker, and Steven Woods, were indicted for aggravated robbery, in violation of R.C. 2911.01(A) (3), and felonious assault, in violation of R.C. 2903.11(A)(1).
Appellant filed a pretrial motion to sever trial, which the trial court denied. At trial, appellee presented the testimony of the victim and one of his co-workers about the events leading up to the victim's disappearance after arriving at the tavern in Fremont. Appellee presented the testimony of the Fremont police officer who was dispatched to the scene where the victim was found, as well as the testimony of the Fremont detective who investigated the incident.
Appellee also presented the testimony of co-defendant Daryl Walker's brother and two children, who were at the fish fry on July 5, 1996. Their testimony varied as to when a white man appeared at the door of the residence, generally suggesting it happened shortly after it turned dark. They testified that appellant, and his two co-defendants, chased the man. Although the witnesses could not see exactly what happened once the victim and three defendants were out of eyesight, the witnesses testified that the three defendants returned minutes later with cash.
After appellee rested its case, appellant and co-defendant Steven Woods rested without presenting any evidence in defense. Co-defendant Walker presented the testimony of his girlfriend, Amanda Young, on his behalf. She testified that she had been with Walker at the fish fry inside the house the night of July 5. She did not recall ever seeing Walker leave the house to run after a white man who appeared at the door. Ms. Walker denied that she had told the detective that Walker told her he chased the victim but did not assault him. In turn, appellee recalled the detective in rebuttal to testify about inconsistencies between Amanda Walker's testimony and a statement she had given the detective on July 8, 1996, two days after the victim was beaten.
The jury acquitted appellant of aggravated robbery. However, the jury found him guilty of complicity to commit felonious assault.
In his first assignment of error, appellant contends that the trial court erred to his prejudice by requiring him to be tried jointly with co-defendant Daryl Walker. According to appellant, because Walker attempted to show at trial that Walker did not chase or beat the victim, the co-defendant's defense was antagonistic to his and required a separate trial.
Appellant relies upon the co-defendant's cross-examination of the Fremont detective about inconsistencies during the trial testimony of one of the children who was at the house. Unlike the statement he gave to the detective shortly after the incident, that child testified at trial that he was no longer sure co-defendant Daryl Walker had cut-off the victim during the chase.
Appellant also points to the testimony the co-defendant presented after appellant rested his case. The co-defendant's girlfriend testified that she had been with the co-defendant at the house at the time of the incident and that the co-defendant never left the house to chase or harm the victim. Appellee then recalled the detective in rebuttal to suggest the girlfriend's testimony was inconsistent with statements she had given two days after the incident. As a result, appellant suggests that because the co-defendant's witness was so unbelievable, appellant was prejudicially denied the right to confront and cross-examine witnesses.
Appellee counters that because no statements of any co-defendants which implicated appellant in any crime were introduced, the rule ofBruton v. United States (1968), 391 U.S. 123 does not apply. That rule requires separate trials if statements made by a co-defendant are admitted where the co-defendant cannot be cross-examined. Id.
at 126. Appellee contends further that statements of co-conspirators are admissible against each other as a hearsay exception under Evid.R. 801.
Crim.R. 14 defines when separate trials are appropriate:
 "If it appears that a defendant or the state is prejudiced by a joinder of * * * defendants in an indictment * * * or for trial * * *, the court shall * * * grant a severance of defendants * * *. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at trial."
Because appellee did not introduce any statements of co-defendants which implicated appellant, separate trials were not required under the Bruton rule. The Bruton rule applies to all statements, whether confessions to police or statements made to a non-police witness, that significantly tend to incriminate a co-defendant, whether or not he is actually named in the statement.State v. Moritz (1980), 63 Ohio St.2d 150, 154-155.
 "The admission in to evidence, at a joint trial, of a co-defendant's confession that implicates the other defendant, when the co-defendant fails to take the stand, violates the other defendant's Sixth Amendment Right to confrontation even if limiting instructions are given to the jury explaining that the co-defendant's confession can only be used against that co-defendant and must be disregarded as to the other defendant. * * * This rule applies only if the statement can be understood as referring to the other defendant. * * * Furthermore, any error in admitting such confession will not be prejudicial if `there is other sufficient independent evidence of an accused's guilt to render improperly admitted statements harm less beyond a reasonable doubt.' * * *"
State v. Price (Mar. 29, 1996), Lucas App. No. L-95-071, unreported.
The jury heard only one of co-defendant Walker's statements during appellee's rebuttal. Appellee asked the detective whether the co-defendant's girlfriend had made a statement about whether Walker said he had participated in the beating of the victim. No statements or confessions of appellant, or his co-defendants, were introduced to implicate appellant. Consequently, no question of a denial of the right of confrontation or cross-examination arises under the prohibition against using the admission or confession of a nontestifying co-defendant to implicate a defendant. See Bruton v. United States,391 U.S. 123, at 135-36; State v. Moritz, 63 Ohio St.2d 150.
A defendant must show good cause for separate trials and must affirmatively show his rights will be prejudiced. State v.Robles (1989), 65 Ohio App.3d 104, 112. Separate trials are not required whenever co-defendants have conflicting or antagonistic defenses. State v. Daniels (1993), 92 Ohio App.3d 473, 486, citing Zafiro v. United States (1993), 506 U.S. 534, 537. To decide whether to use its discretion to grant a severance, a trial court must balance the possibility of prejudice to the defendant against the state's interest in judicial economy. Statev. Brooks (1989), 44 Ohio St.3d 185.
The trial court denied appellant's pretrial motion to sever, which contended that some witnesses might testify about alleged statements appellant or co-defendant Darryl Walker made, which might implicate appellant in the offense. No statements of this nature were introduced during trial.
At the close of appellee's case, appellant did not raise the issue of misjoinder. Instead, appellant rested. Appellant suggests that because Walker's evidence attempted to exculpate Walker by blaming appellant, appellant was prejudiced and denied the constitutional right to cross-examination, which is included in the right to confront witnesses.
Nothing indicates the defendants had antagonistic defenses. All three defendants maintained they had nothing to do with the beating of the victim. Here, one co-defendant presented an alibi witness to demonstrate he had nothing to with the beating.
The court instructed the jury:
 "Defendants Woods and Jones rested their cases at the end of the State of Ohio's case.
"Essentially, their cases were concluded at that point.
 "Therefore, anything testified to in Defendant Walker's case or the rebuttal testimony thereto, cannot be considered for or against Defendants Woods and Jones."
The fact that witness testimony about a co-defendant may be inconsistent with prior statements about that co-defendant's role does not present an antagonistic defense requiring separate trials. Further, the trial court instructed the jury not to consider matters presented during co-defendant Walker's defense. Appellant's first assignment of error is not well-taken.
We will address appellant's second and third assignments of error together. In his second assignment of error, appellant argues that the trial court erred by allowing a detective to use a police report to refresh his recollection without allowing appellant to review the report. The detective did not use the police report, which several police investigators contributed to, to refresh his recollection until asked to do so by co-defendant Steven Woods' attorney on cross-examination. Appellant did not ask to review the report until all three defendants completed cross-examination. The record indicates a partial police report was provided to appellant during discovery. Appellant also ascribes error to the trial court's failure to preserve the police report in the record to allow appellate review as provided in Crim.R. 16(B)(1)(g).
Appellee contends that police reports used to refresh a witness's recollection do not need to be furnished to a defendant under Crim.R. 16(B)(1)(g) where a trial court determines no inconsistencies exist between the witness's testimony and prior written statements.
Evid.R. 612 provides:
 "Except as otherwise provided in criminal proceedings by Rules 16(B)(1)(g) and 16(C)(1)(d) of Ohio Rules of Criminal Procedure, if a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."
Crim.R. 16(B)(2) prohibits disclosure of reports, including witness statements, made by the prosecuting attorney or his agents regarding the investigation of the case unless a specific exception applies. This includes police reports such as that used by the witness. However, appellant contends Crim.R. (16)(B)(1)(c), (f), and (g) apply to require the inspection of exculpatory information allegedly contained in the writing the officer used to refresh his recollection.
 "A claimed error not objected to will not be noticed on appeal unless it rises to the level of plain error. See State v. Underwood (1983), 3 Ohio St.3d 12 * * *. To rise to the level of plain error, it must appear on the face of the record not only that the error was committed, but that except for the error, the result of the trial clearly would have been otherwise * * *."
State v. Bock (1984), 16 Ohio App.3d 146, 150.
Crim.R.(16)(B)(1)(g) does not permit appellant to have unfettered access to police reports containing witness statements. Defendants may view such reports if the trial court determines, upon in camera inspection of the report, after a witness completes direct examination at trial, that inconsistencies exist between the trial testimony and statement. Even if a trial court permits a party to use such a report for cross-examination purposes, its use is limited:
 "Rule 612 does not authorize the adverse party to use the writing to cross-examine the witness concerning things he has not testified to on direct examination. Nor does Rule 612 permit the writing to be used as substantive evidence. The writing is solely used to aid in evaluating the testimony of the witness. * * *"
State v. Arnold (July 20, 1984), Lucas App. No. L-83-421, unreported.
The detective never used the police report during direct examination. Instead, he referred to the police report for the first time when one of appellant's co-defendants asked the detective to review it. Further, appellant did not request incamera inspection until after appellant completed cross-examination. Consequently, the trial court had no obligation to inspect the report. Nonetheless, the court did review the statement and found no inconsistencies. We cannot conclude that the trial court's determination that no inconsistencies existed between the detective's trial testimony and the information contained in the police report rose to the level of plain error.
Similarly, appellant suggests that he should have been permitted to review the police report to discover evidence materially favorable to his guilt or punishment, as provided in R. 16(B)(1)(f), and as a document, as provided in Crim.R. 16(B)(1)(c). Appellant properly filed a pretrial discovery motion to obtain such evidence. For the reasons previously discussed, we cannot conclude that after inspecting the police report after appellant completed cross-examination, the trial court erred by refusing to allow appellant to use the police report to cross-examine the detective. Appellant's second assignment of error is not well-taken.
The failure of the trial court to include the police report in the record on appeal, as required under Crim.R. 16(B)(1)(g), was not error in light of our disposition of appellant's second assignment of error. Appellant's third assignment of error is not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining. The judgment of the Sandusky County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Melvin L. Resnick, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.