THE STATE OF OHIO, APPELLEE, *v.* MORITZ, APPELLANT.

[Cite as State v. Moritz (1980), 63 Ohio St. 2d 150.]

(No. 79-1546—Decided July 16, 1980.)

152

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas J. Wagner,* for appellee.

*Messrs. Tricarichi, Carnes, Kube & Weinberger, Mr. James S. Carnes* and *Mr. Peter H. Weinberger,* for appellant.

PAUL W. BROWN, J. Appellant raises four propositions of law. Appellant first contends that the trial court committed prejudicial error when it failed to grant a separate trial in this cause, where extrajudicial statements of a codefendant not subject to cross-examination were used against him.

Prior to trial, appellant made a motion for a separate trial under Crim. R. 14, which provides, in pertinent part, that:

"If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1)(a) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

Severance of the trials of the two codefendants was sought based upon the case of *Bruton* v. *United States* (1968), 391 U.S. 123. The holding of that United States Supreme Court decision was succinctly summarized in *United States* v. *Fleming* (C.A. 7, 1979), 594 F. 2d 598, 602, certiorari denied 61 L. Ed. 2d 299, where it was stated:

"In *Bruton,* the Supreme Court held that in a joint trial of two defendants, a confession of one co-defendant who did not testify could not be admitted into evidence even with a limiting instruction that the confession could only be used against the confessing defendant. The rationale of *Bruton* was that the introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by the Sixth Amendment."

In the instant cause appellant's codefendant, Porter, exercised his privilege against self-incrimination and chose not to take the stand in his own behalf in this joint trial. Prior statements made by Porter were admissible against Porter himself, however, under the exception to the hearsay rule, which allows for admission of statements made against one's own interests. See, generally, McCormick on Evidence (2 Ed.), 628, Section 262. Appellant contends that some of these statements, like the confession made in *Bruton,* implicated him, without an opportunity for cross-examination of the declarant.[1] It is further contended that the trial court's

---

[1] Porter's contested statements were made over the continuing objection of ap-

limiting instruction that directed the jury to consider the evidence against each defendant separately was ineffective, like the instruction given in *Bruton.*

The situation presented in the instant cause is somewhat different from *Bruton* in that the codefendant's statements at issue were not made in a confession to the police but were instead made to a prosecution witness. The constitutional problems with confrontation and cross-examination, however, are the same. We agree with the Supreme Court of Delaware's treatment of a similar situation. That court, in analyzing the matter before it, stated:

"* * * The State's position here, as the Court understands it, simply is that the *Bruton* Court and others which have dealt with this problem were dealing only with the confession or statement of one defendant made to the police and that here the statement involved was heard by a non-police witness and should be treated via the older method of jury instruction. The Court cannot agree with this argument. A reading of the Court's rationale in the *Bruton* case, as well as the Court in *People* v. *Aranda,* Cal. Supr., 63 Cal. 2d 518, 47 Cal. Rptr. 353, 407 P. 2d 265 (1965), lead inescapably to the conclusion that it makes no difference from whence cometh the pretrial statement of one defendant implicating another." *State* v. *Rooks* (Del. Super. 1977), 382 A. 2d 1380, 1382.

Appellant focuses on two evidentiary aspects of the state's case, which he claims prejudiced his defense by being admitted without presenting an opportunity for cross-examination. Objection is made to testimony elicited from Mrs. Pollard concerning conversations she had with appellant's codefendant, Porter. It was testified that Porter on two occasions stated that "blue coats" (a reference to the policemen he was

---

pellant's counsel. The state claims that these statements fall within the co-conspirator exception to the hearsay rule recognized in *State* v. *Carver* (1972), 30 Ohio St. 2d 280. We are not persuaded by the state's arguments in this regard, however, because the applicability of that exception has not been demonstrated. See, generally, Davenport, The Confrontation Clause and the Co-conspirator Exception in Criminal Prosecutions: A Functional Analysis, 85 Harv. L. Rev. 1378. Particularly, we cannot conclude that Porter's remarks were made in furtherance of the objectives of the conspiracy. See *United States* v. *Moore* (C.A. 9, 1975), 522 F. 2d 1068, certiorari denied 423 U.S. 1049. The conversation quoted in fn. 2, *infra,* especially illustrates the problem with that requirement.

dealing with) said that for "two big ones" ($2,000) the charge against Pollard could either be reduced or dropped. The second specific violation of the *Bruton* rule is alleged to have occurred when a tape recording of a telephone call between Mrs. Pollard and Porter was introduced in evidence. This recording does not make reference to appellant by name, but the person being discussed is referred to as the Sergeant and as the "blue coats" boss.[2]

The references made in these statements are not altogether clear, but when taken in context with other testimony and the totality of the evidence, they are sufficiently specific to inculpate the appellant and, thus, bring into play the protections of *Bruton*. We agree with the statement that:

"\*\*\*[T]he *Bruton* rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. The fact that the incrimination amounts to a link in a chain of circumstances rather than a direct accusation cannot dispose of the applicability of the *Bruton* rule. Just as one can be convicted on circumstantial evidence, one can be circumstantially accused." *Fox* v. *State* (Ind. App. 1979), 384 N.E. 2d 1159, 1170.

Our conclusion that appellant was implicated in these two instances contrary to his right of confrontation does not,

[2] The tape recording of this conversation taking place on November 1, 1977, included the following colloquy:

"[Mrs. Pollard] Can you get a hold of the Sergeant?

"[Porter] I don't know how to get a hold of nobody. That's what I told you in the beginning. I still don't. I don't even know the guy's name.

"\*\*\*

"[Mrs. Pollard] And I can't figure out how the Sergeant got in."

"[Porter] Huh?

"[Mrs. Pollard] I can't figure out how the Sergeant got in.

"[Porter] I don't know. Hmm. I don't know what's happening.

"[Mrs. Pollard] Yeah. Because the way you was saying the message to me I thought it was from the Blue Coat.

"[Porter] Well, that's uh, that's uh, that's I imagine that's their boss.

"[Mrs. Pollard] Well, that's what he said.

"[Porter] That's their boss. Yeah. He's their boss. (unintelligible) And I don't guess they have any authority to do anything, you know?

"[Mrs. Pollard] Without the Sergeant?"

This conversation implicates appellant but seems as favorable to his defense as it is damaging.

however, mean that his conviction is to be automatically reversed. The line of cases following *Bruton* have firmly established that an error of this sort may be harmless. In *Schneble* v. *Florida* (1972), 405 U.S. 427, 430, the Supreme Court declared:

"The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." See, also, *Harrington* v. *California* (1969), 395 U.S. 250; *Parker* v. *Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713; and *Elliott* v. *Thompson* (C.A. 6, 1979), 599 F. 2d 767, certiorari denied 62 L. Ed. 2d 190.

In the instant cause there was more than sufficient independent evidence of appellant's guilt to render admission of the contested statements harmless beyond a reasonable doubt. Mrs. Pollard testified extensively as to her dealings with appellant and the tape recordings of her conversations with him were overwhelming proof of his guilt. Appellant's own testimony was in the nature of confession and avoidance in that he admitted taking $1,000 and having contact with Mrs. Pollard on several occasions. He claimed, however, that he was merely playing along with Mrs. Pollard in order to initiate bribery charges against her. It was the jury's province to assess the credibility of each of these individuals and to determine which version of the events to believe. Mrs. Pollard's testimony alone was sufficient to support appellant's conviction. Cross-examination and confrontation of Porter on these minor peripheral references to appellant could not have changed the outcome of the trial. It was the jury's acceptance of Mrs. Pollard's testimony and disbelief of appellant's account which resolved this matter.

It must be admitted that in this type of situation it may be advisable for the trial court to grant separate trials to avoid these confrontation problems. Dawson, Joint Trials of Defendants in Criminal Cases: An Analysis of Efficiencies and Prejudices, 77 Mich. L. Rev. 1379, 1412. See, also, Case Com-

ment, Multiple Criminal Representation Examined: *Holloway* v. *Arkansas* (1978), 435 U.S. 475, 40 Ohio St. L.J. 251, 253-254. There was no prejudice, however, to appellant in the instant cause.

Appellant's second proposition of law contends that the prosecutor in closing argument improperly called upon the jury to consider elements and factors beyond the evidence presented during the trial. The following portion of the prosecutor's argument is alleged to constitute prejudicial error warranting reversal of appellant's conviction:

"***What we have here is not a witch hunt in any sense of the word, we are not looking for bad guys, we are trying this case. However we as citizens must have high expectations of our public officials, of our police officers, of our Court personnel. The improprieties and the illegalities, the abuses that you have heard about in this courtroom must be exposed and condemned. We can't have bribery and corruption and at the same time have a democracy. If you as individuals and if you collectively as the jury in this case will say no, we will not tolerate such abuses, we will not tolerate bribery, we will not tolerate the buying of reduced charges, or we will not tolerate the throwing out of very serious charges for money, then you will put not only Moritz and Porter on notice but you will put all corrupt police officials, public officials on notice that this community will not stand for this kind of activity."

A subsequent motion for a mistrial based in part upon this portion of the argument made by the prosecutor was denied. We conclude that this motion was properly denied.

A closing argument that goes beyond the record may constitute prejudicial error, *State* v. *Muskus* (1952), 158 Ohio St. 276, certiorari denied 347 U.S. 938, particularly where the remarks call for the jury to convict to meet a public demand. *State* v. *Davis* (1978), 60 Ohio App. 2d 355. The closing argument must, however, be reviewed in its entirety to determine if the prosecutor's remarks were prejudicial. See *State* v. *Burgun* (1978), 56 Ohio St. 2d 354, 366; see, also, *State* v. *Porter* (1968), 14 Ohio St. 2d 10, paragraph two of the syllabus.

In the instant cause we conclude that such a review of the prosecutor's closing argument in its totality discloses no pre-

judice to the appellant. There were several references throughout this argument to deciding the case based upon the evidence presented. We hold, as the Court of Appeals did, that the quoted passage was premised upon an establishment of the guilt of appellant. It simply rebutted appellant's closing argument which called for the jury to view these public officials in a sympathetic light.

In his third proposition of law appellant claims that the prosecutor committed error by commenting on codefendant Porter's failure to testify on his own behalf. There is a well-established constitutional rule prohibiting adverse comment by a prosecutor or court upon an accused's failure to testify. *Griffin* v. *California* (1965), 380 U.S. 609; *State* v. *Lynn* (1966), 5 Ohio St. 2d 106, paragraph one of the syllabus. There is, however, disagreement among the courts as to whether comment on the failure of a codefendant to testify may constitute reversible error. See cases collected in Cook, Constitutional Rights of the Accused: Trial Rights, 254, Section 64. Assuming, *arguendo,* that appellant may have been affected by comment upon his codefendant's failure to testify, we still find this proposition of law to be without merit.

The prosecution in this cause stated: "***and the fact that these things were said by Porter, was never disputed." The reference to "these things" was to Mrs. Pollard's allegations that Porter had stated that the case could be taken care of for "two big ones." This comment by the prosecutor did not focus attention on Porter's silence but merely commented on the state of the evidence concerning this matter. This court has previously found this type of comment to be valid and we reject appellant's third proposition of law based upon that authority. *State v. Lytle* (1976), 48 Ohio St. 2d 391, 404; *State* v. *Lockett* (1976), 49 Ohio St. 2d 48, 65, modified on other grounds, 438 U.S. 586; *State* v. *Wade* (1978), 53 Ohio St. 2d 182, 186. See, also, Annotation 14 A.L.R. 3d 723.

Appellant's final proposition of law questions the propriety of the trial judge's jury instruction concerning aiding and abetting. The claim being made is that there was no evidence linking appellant and Porter and, thus, an instruction concer-

ning complicity under R. C. 2923.03 should not have been made.

We find these contentions to be without merit. While a review of the evidence demonstrates that there was no direct testimony connecting the two men in the bribery scheme, there was, however, ample circumstantial evidence of a prima-facie case of complicity. Evidence such as appellant's initial phone conversation with Mrs. Pollard, when he allegedly referred to the possibility of dismissing her husband's attorney and also made reference to "two big ones," which came one day after she requested Porter to put her in contact with the principals involved in "taking care" of her husband's case, was sufficient to establish a link between the two codefendants.

Accordingly, the Court of Appeals is affirmed on all issues raised by appellant.

*Judgment affirmed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.