[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant Bruce Champion appeals from his conviction and sentence, following a jury trial, upon one count of Aggravated Burglary, two counts of Kidnapping, and two counts of Aggravated Robbery, all with firearm specifications. Champion contends that the trial court erred when it admitted in evidence, over his objection, a statement that Lloyd Jackson, an alleged co-perpetrator, made to a police officer that he, Jackson, was present at the scene of the crime when the crime occurred. Champion contends that this violated his right to confront the witnesses against him, pursuant to Bruton v. United States (1968),391 U.S. 123. In our view this testimony concerning Jackson's admission, while corroborating the testimony of a surviving victim and one other witness that Jackson was the co-perpetrator, did not implicate Champion, and did not, therefore, violate his rights under the Confrontation clause of the Sixth Amendment to the United States Constitution.
Champion also argues that the trial court erred when it failed to merge his Aggravated Robbery and Kidnapping convictions. We conclude that the force used in committing the Kidnapping offenses exposed the victims to a significantly greater risk of harm than was necessary to commit the Aggravated Robbery offenses, and that, therefore, the trial court properly declined to merge the offenses.
The judgment of the trial court is Affirmed.
 I
According to the surviving victim, Beverly Williams, Champion and Jackson, both of whom were known to her, entered her residence on May 30, 1997. George Robinson was also in the residence at that time. After entering, Champion said, "I'm tired. It's been a rough day. I need some money," pulled out a black revolver, and laid it on the table. Jackson, following Champion's instructions, taped Robinson's wrists and ankles.
Champion then told Jackson to tape Williams's hands. When Williams refused to cooperate, Champion picked up the gun and ordered her to turn around. Jackson taped Williams's mouth and wrists, but taped her wrists loosely. Champion mocked Jackson, asking him if he had learned how to tape in the Boy Scouts; then Champion re-taped Williams's hands more tightly.
While this was going on, Williams's phone rang, and Jackson answered the phone. Juan Crawford was calling to tell Williams he was on his way to her house. Jackson hung up the phone, and told Champion that Crawford would be coming over shortly. Champion handed Jackson the gun, and told him to get behind the door. When Crawford knocked, Jackson, whom Crawford knew, opened the door. Crawford saw the gun, Jackson, and Williams on the floor, with her mouth taped. He fled. He did not see Champion.
Champion then pulled the phone cord out of the wall, wrapped the cord around Williams's neck, and began to choke her. Since Williams was struggling, Champion took his gun back from Jackson. He continued choking Williams, and demanding money. When Williams finally told Champion that she had money in her bra, he tore her sweater to get the money. He also took her watch and ring, and then began choking her again with the phone cord. Despite the fact that Williams was able to get her fingers under the phone cord, Champion continued choking her until she passed out.
When Williams regained consciousness, she crawled to a neighbor's house, and police were notified. The police officers responding to the call found Robinson lying dead on the floor. Two spent .38 caliber bullets were found near the body. Additional .38 bullets and bullet fragments were retrieved during the autopsy. The cause of death was multiple gunshot wounds. Robinson had wounds to his leg, hands, abdomen and chest.
Williams identified Champion and Jackson, both of whom she knew previously, as the perpetrators. Crawford, who had previously known Jackson by sight but not by name, picked Jackson's photograph from a photo spread, without having had the opportunity to talk to Williams beforehand. Crawford was positive in his identification of Jackson as the man standing behind the door with the gun; he had had no opportunity to observe the other perpetrator.
Champion and Jackson were apprehended in Kentucky, and charged in connection with these offenses. Champion was tried separately from Jackson. Specifically, Champion was indicted upon one count of Aggravated Burglary, two counts of Kidnapping, two counts of Aggravated Robbery, and one count of Aggravated Murder. At trial, a police officer was permitted to testify, over Champion's objection, that Jackson had admitted his presence at Williams's house at the time of the offense. A jury found Champion guilty of all counts, except the Aggravated Murder count, of which Champion was acquitted. The jury also found Champion guilty of firearm specifications with respect to all of the counts for which he was convicted. A judgment of conviction was entered upon the jury's verdict, and Champion was sentenced accordingly. From his conviction and sentence, Champion appeals.
 II
Champion's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN ADMITTING A STATEMENT OF APPELLANT'S CO-DEFENDANT IN VIOLATION OF APPELLANT'S CONSTITUTIONAL CONFRONTATION.
The parties stipulated that Jackson, if called as a witness, would assert his Fifth Amendment privilege against self-incrimination. Champion relies upon Bruton v. United States
(1968), 391 U.S. 123, for the proposition that it was error to admit Jackson's out-of-court statement implicating Champion. Champion relies further upon State v. Moritz, (1980), 63 Ohio St.2d 150,155, for the following proposition:
 The Bruton rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement. The fact that the incrimination amounts to a link in a chain of circumstances rather than a direct accusation cannot dispose of the applicability of the Bruton rule. Just as one can be convicted of circumstantial evidence, one can be circumstantially accused.
In Moritz, supra, a police sergeant and a municipal court bailiff were jointly tried for Bribery. Statements made by the bailiff were admitted in evidence against the police sergeant. Although the bailiff never referred to the sergeant by name, it is clear from the context of the bailiff's out-of-court statements that he was referring to that particular sergeant, his co-defendant, Richard Moritz, as the individual involved in the bribery.
Champion argues that, as in Moritz, supra, although Jackson's out-of-court statement did not refer to him by name, his identity is clear from the context. That would be an interesting argument if the question actually propounded during Champion's trial had been the same as the question with which the liminal ruling was concerned.
There was an argument to the trial court, out of the presence of the jury, concerning this issue. In the course of that argument, the State framed the proposed question to the interrogating police officer as follows:
 Did Lloyd Jackson admit participating with another in criminal acts involving tape and a gun against George [Robinson] and Beverly [Williams] after George let them in?
(Emphasis added.)
However, the question actually propounded during the trial, in the presence of the jury, was as follows:
 Did Lloyd Jackson admit his presence at Beverly's house at the time in question?
Thus, although the question discussed in connection with the liminal ruling directly implicated an unnamed co-perpetrator, the question actually asked and answered at trial did not. Of course, the question presumably had relevance, in that it tended to corroborate the testimony of Williams and Crawford, who had both testified concerning Jackson's participation in the offenses. However, Jackson's out-of-court statement, as it was actually presented to the jury during the trial, did not directly imply participation by a co-perpetrator, named or unnamed. Accordingly, we find the case before us to be distinguishable from State v.Moritz, supra.
Champion's First Assignment of Error is overruled.
 III
Champion's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN FAILING TO MERGE THE KIDNAPPING CONVICTIONS INTO THE AGGRAVATED ROBBERY CONVICTIONS.
Champion cites State v. Campbell (August 3, 1993), Montgomery App. No. 13138, unreported, for the proposition that Kidnapping and Robbery are generally allied offenses of similar import. However, we held that the Kidnapping offense in that case was not an allied offense of similar import to the Robbery offense in that case, because the form of restraint used in that case demonstrated a substantial increase in the risk of harm separate and apart from that used for Robbery.
 The primary issue . . . is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape.
 In said circumstances, we cannot say that appellant had a separate animus to commit kidnapping.
 We adopt the standard which would require an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found. For example, prolonged restraint in a bank vault to facilitate commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger.
State v. Logan (1979), 60 Ohio St.2d 126, 135.
We agree with the State that the facts in this case meet the test set forth in State v. Logan, supra, because Champion's victims were exposed to a significantly greater risk of harm than was necessitated by the commission of the Aggravated Robbery offense. As charged, the Aggravated Robbery offenses did not require, as an element, the use of force, or the threat of the use of force; it was enough that a gun was used or displayed in connection with the offense. By taping his victims' limbs and mouth, and leaving them in this helpless condition,[1]
Champion exposed them to a significantly greater risk of harm than was necessary for the accomplishment of the Aggravated Robbery offense. Accordingly, we conclude that the trial court did not err when it declined to merge the Aggravated Robbery and Kidnapping convictions.
Champion's Second Assignment of Error is overruled.
 IV
Both of Champion's assignments of error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.
Copies mailed to:
Lynda K. Ashbery
Richard Hempfling
Hon. Adele Riley
[1] The jury evidently found that the State failed to prove that Champion, or Jackson acting in complicity with Jackson, shot and killed Robinson. The jury could certainly infer that Robinson was left in the exposed and precarious position of his limbs and mouth being taped when Champion left the scene. Williams testified that Champion choked her to the point that she lost consciousness before leaving the scene.