Judgment Appealed From Is: Affirmed
DECISION.
Defendant-appellant, Rashad Saleem, was found guilty by a jury of two counts of aggravated drug trafficking. Saleem appeals the judgment of the trial court convicting him pursuant to the jury's verdict and sentencing him to incarceration for five to fifteen years on the first count and to four years on the second count, with the sentences to run concurrently.
In his first assignment of error, Saleem claims that the trial court erred in overruling his Crim.R. 29 motion for acquittal, made at the close of the state's case. A court shall not order an acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.[1]
In this case, Saleem was charged with violating R.C.2925.03(A)(2)[2] and R.C. 2925.03(A)(6), which prohibit, respectively, the preparation or transportation of controlled substances and the possession of a controlled substance in more than three times the bulk amount.
Acting upon a tip that drug trafficking was occurring in a certain apartment, two undercover Cincinnati police officers went to the apartment to investigate. Upon entering the apartment, the officers greeted Danielle Hunter, who rented the apartment, and told her of their purpose to investigate reports of drug sales. According to Officer Greer and Officer Brown, Hunter consented to the search of her apartment. Hunter claimed that she never gave consent, but instead insisted that the officers needed a search warrant.
Seeing Saleem in the back bedroom, Brown conducted what he described as a protective sweep of the apartment. Brown then told Saleem to stay with Greer while he and Hunter looked around the apartment. Hunter did not deny accompanying Brown during the search, and she did not take any action to stop the search.
Brown testified, and Hunter denied, that Brown opened the nightstand in the master bedroom and found crack cocaine. He called out to Greer as soon as he discovered the substance, and Saleem was handcuffed. Brown then continued his search of the apartment, looking in the closet of the master bedroom. In the closet, Brown found a black leather coat, and he testified that he saw a baggie sticking out of the inside pocket. He withdrew the bag from the jacket and determined that it contained a substantial amount of crack cocaine.
Hunter testified, and Brown denied, that she informed Brown that the jacket belonged to someone named Fabio (or Carlo) Estrada. According to Brown, Hunter stated that she was holding the drugs for Saleem's uncle, known to her only as "Uncle Boo," and that Boo had given her and Saleem money to hold the drugs for him.
Still looking in the closet, Brown saw a shoebox on the shelf and took the box down. The shoebox contained $1,000 in cash. Hunter claimed that she told Brown that she had received the money from an income tax refund. Brown took the drugs and the money into the living room, where Greer was sitting with Saleem, who was still handcuffed. Hunter was then also handcuffed. At some point, Hunter insisted that the officers needed a warrant to search her apartment. Greer thereafter obtained a warrant, and the resulting search uncovered a scale and baggies.
Brown questioned Saleem about the drugs, and Brown stated that Saleem eventually admitted that he was holding the drugs for his "Uncle Boo," and that he was being paid to keep the drugs. Hunter testified that neither she nor Saleem told the officers that they were holding the drugs for anyone. Saleem was subsequently charged with two counts of aggravated trafficking.
At the time the of Saleem's arrest, R.C. 2925.03(A)(2) stated, (A) No person shall knowingly do any of the following:
* * *
 (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another.
 R.C. 2925.03(A)(6) stated, (A) No person shall knowingly do any of the following:
* * *
 (6) Possess a controlled substance in an amount equal to or exceeding three times the bulk amount, but in an amount less than one hundred times that amount.
According to R.C. 2925.01(E), the "bulk amount" for crack cocaine in 1995 was ten grams. At trial, a drug analyst testified that the total amount of crack cocaine recovered from the apartment was 141.59 grams. Greer also testified that a small rock of the crack cocaine had been bagged separately, indicating that the crack cocaine was packaged for distribution or sale. Greer and Brown testified that the large amount of cash that they found in the apartment, as well as the baggies and a scale, indicated that the drugs were being prepared for sale or distribution.
In ruling on a Crim.R. 29 motion for acquittal, the trial court is obligated to view the evidence in the light most favorable to the prosecution.[3] This court will not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt.[4]
We hold that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to prove each of the elements of the offenses charged beyond a reasonable doubt. Both officers testified that Saleem admitted that he was keeping the drugs for his uncle, who had paid him to do so. The amount of drugs and the manner in which the crack cocaine was packaged supported the finding that Saleem was involved in the distribution or sale of the drugs. Thus, we hold that the trial court did not err in overruling Saleem's motion for acquittal.
Saleem also contends that his conviction was against the manifest weight of the evidence. To reverse on the manifest weight of the evidence, a reviewing court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and conclude that, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[5] In this case, we hold that the convictions were not against the manifest weight of the evidence.
The state and the defense presented widely differing accounts of Saleem's arrest and Brown's retrieval of the drugs from inside the apartment. Greer and Brown both testified that Saleem and Hunter admitted to keeping the drugs, allegedly for Saleem's uncle, while Hunter maintained that neither she nor Saleem ever told the officers that they were holding the drugs for someone else.
Hunter stated that the coat, and therefore the drugs, belonged to a family friend named Fabio, who kept some clothes at her apartment, although he did not live there and had not been in contact with Hunter for a long time. The shoebox, Hunter testified, belonged to her sister. The money inside was part of a $2,300 income tax refund she received in 1995. The state presented evidence that Hunter earned approximately $4,000 in 1994 and collected public assistance for at least part of that year.
After reviewing the entire record, we cannot say that the factfinders lost their way in resolving the conflicts in the evidence and created a manifest miscarriage of justice. We therefore overruled Saleem's second assignment of error.
In his third assignment of error, Saleem claims that the prosecutor's improper opening statement and closing argument deprived him of a fair trial. The test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial.[6] Because defense counsel did not object to any of the allegedly improper remarks, we analyze the assignment of error under the plain-error doctrine, since "[a] claim of error in a criminal case can not be predicated upon the improper remarks of counsel during his argument at trial, which were not objected to, unless such remarks serve to deny the defendant a fair trial."[7] Reversal under the plain-error doctrine requires a showing that "but for the error, the outcome of the trial clearly would have been otherwise."[8]
In this case, Saleem contends that the prosecutor made numerous statements improperly impugning defense counsel and suggesting that defense counsel presented lies to the jury. He further argues that the prosecutor compounded the errors by making statements that reflected his personal opinion of the credibility of the witnesses and by commenting on irrelevant testimony. Saleem relies on the following portion of the prosecutor's opening statement:
 The case is really about not what she [defense counsel] said about a police officer not being accurate. What she said the case comes down to is whether the evidence is going to show that two separate sworn police officers, prior to August 8, 1995, didn't know this man from Adam; two police officers that have families and careers, that are professionals, that have been exemplary police officers, whether those two officers are going to come in here, take this stand and commit perjury.
Similarly, in closing argument, the prosecutor argued, And on one of the first days she was cross-examining Detective Olivia Greer, a police officer of seven years, a police officer who is going to have a baby, a police officer who has not one, but two promotions for outstanding work; a police officer who prior to August 8, 1995, didn't know him from Adam and had no reason to come in here and lie, but a police officer that, I would submit to you, was fairly intelligent.
* * *
She told you when she stood up here on Monday in voir dire that the cops were lying and she was going to prove it. I ask you to listen to her going through the evidence with you and shows you they were lying, I think you know who the liars were here.
* * *
All they have to do is escape justice is to come up with a story is to lie, is to attack the credibility of two good police officers.
Saleem also claims that the prosecutor made denigrating comments during his closing argument about Saleem, his defense counsel and her role in the trial, stating, [A]n old guy in our office who is now retired said when you bring a defendant into the courtroom who is dirty with guilt, who is covered with mud, who stinks, and you've got the State's case, which doesn't stink, what's he going to do if he wants a trial[?] If he wants to duke it out in front of a jury, what's he going to do to beat you[?] The answer is he's got to get you to get in the mud with him and get dirty yourself. * * * She [defense counsel] got me down in the mud with her, and now she wants you to get down in the mud with her. * * * [T]heir strategy has been in this case is to get you upset, to get you angry, to make you angry at me, to make you angry at the cops.
The prosecutor also commented that defense counsel's case was made up of "shenanigans and BS," and he encouraged the jury to send a message to defendants like Saleem, stating, "I am confident that your verdict is also going to be a message to people like Mr. Saleem and others that may come through this system and think that all they have to do is escape justice because that's what all this is about. * * * All they have to do [to] escape justice is to come up with a story[,] is to lie, is to attack the credibility of two good police officers. Tell them how it works in the court."
In determining whether these comments by the prosecutor denied Saleem a fair trial, we must look at the fairness of the trial, not the culpability of the prosecutor.[9] We also examine the comments in the context of the arguments as a whole.[10]
In this case, we agree with Saleem that some of the comments were improper. Other comments, however, when considered in context, were not improper. First, the prosecutor did not improperly offer a personal opinion on the credibility of the witnesses, but commented on the factors that were relevant to the jury's determination of credibility. Because these comments were based on the evidence adduced at trial and related to a critical issue in the case, they were not improper and did not unfairly prejudice Saleem or deprive him of a fair trial.[11]
Additionally, the prosecutor's statement to the jury to send a message to Saleem and others like him was not an admonition to the jury to disregard the evidence and succumb to societal pressure for a guilty verdict. Rather, it was akin to an appeal to the jury to uphold societal standards, which the Supreme Court of Ohio has held to be proper.[12]
The prosecutor's description of Saleem as stinking, dirty and covered in mud, was improper, as was the prosecutor's denigration of defense counsel's role as reflected in the statement that she was attempting to drag the prosecutor and the jury into the mud with her. Also improper was the prosecutor's statement that defense counsel was engaged in subterfuge by trying to get the jury angry at the police officers and to mislead the jury into considering material that was not in evidence.
However, we hold that these improper comments did not deprive Saleem of a fair trial and did not prejudice any of his substantial rights. Although beyond the bounds of reasonable argument, such comments, when viewed in light of the entire closing argument, did not rise to the level of plain error. During his closing argument and again in rebuttal, the prosecutor urged the jurors to consider only the evidence presented at trial in determining Saleem's guilt, to weigh the credibility of the witnesses using relevant factors, to decide the issue of reasonable doubt for themselves and to follow the court's instructions in determining guilt. We cannot say that, but for the prosecutor's comments, the outcome of the trial would have been different. We therefore overrule Saleem's third assignment of error. The judgment of the trial court is affirmed.
Judgment affirmed.
 Hildebrandt, P.J., Painter and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
Please Note:
The court has placed of record its own entry in this case on the date of the release of this Decision.
[1] State v. Bridgeman (1978), 55 Ohio St.2d 261,381 N.E.2d 184, syllabus.
[2] Because the conduct on which the convictions are based occurred prior to July 7, 1996, all statutory references are to the version of the statute as it existed prior to 1996.
[3] See Bridgeman, supra, at 263, 381 N.E.2d at 185.
[4] See State v. White (1989), 65 Ohio App.3d 564, 567,584 N.E.2d 1255, 1257.
[5] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720, cited with approval in State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546.
[6] State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394, 400; State v. Fears (1999), 86 Ohio St.3d 329, 332,715 N.E.2d 136, 143.
[7] State v. Wade (1978), 53 Ohio St.2d 182, 373 N.E.2d 1244, paragraph one of the syllabus; State v. Fears,86 Ohio St.3d at 332, 715 N.E.2d at 143.
[8] See State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[9] See Smith v. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct 940,947; State v. Moritz (1980), 63 Ohio St.2d 150, 157,407 N.E.2d 1268, 1273.
[10] See id.
[11] See State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883, 885 (comments improper where no evidence supported them).
[12] See State v. Williams (1986), 23 Ohio St.3d 16, 20,490 N.E.2d 906, 911.