OPINION
Appellant Robert Welling appeals his conviction, for aggravated menacing, in the Canton Municipal Court. The following facts give rise to this appeal. On June 6, 2000, Theodore Brady II, the victim in this case, and two co-workers, Daniel Boyle and Bret Bricker were landscaping for a Taco Bell Restaurant located on West Main Street in the City of Louisville. While working, Brady noticed his ex-girlfriend, Jenny McCarthey, drive by in a Blazer. Appellant was driving the Blazer. Brady acknowledged McCarthey and said "hi" to her. McCarthey did not acknowledge Brady. After driving past the Taco Bell Restaurant, appellant turned the Blazer around and drove into the parking lot where Brady was working. Appellant parked the Blazer approximately one to two spaces away from the landscaping truck. Appellant and McCarthey exited the Blazer and walked toward the restaurant. Appellant looked at Brady as he passed him and Brady responded: "what the fuck are you staring at?" Appellant then entered the restaurant, immediately exited the restaurant and returned to the Blazer. Appellant reached into the passenger side of the Blazer, pushed the seat forward, grabbed a gun, removed it from the Blazer and showed it to Brady and his co-workers. Appellant placed the gun in his waistline and pulled his shirt down over it. Appellant went back into the restaurant, retrieved McCarthey and left the restaurant. Upon seeing the gun, Brady and one of his co-workers left the scene and ran across the street to the IGA grocery store. Brady, as well as the co-worker that stayed behind at the restaurant, summoned the police. Roxanne Kouskouris, a patron at the restaurant, also witnessed the entire incident from inside the restaurant. Officers Ellen McDade and Steven Fetterman, of the Louisville Police Department, responded to the call. Upon arriving at the scene, Officer McDade noticed that Brady was physically shaking and his two co-workers were excited and speaking quickly. Officer McDade performed a quick search of the area looking for appellant and then collected statements from the witnesses. Officer Fetterman attempted to follow appellant's vehicle but was unable to find it. While searching for appellant's vehicle, Officer Fetterman met two Stark County Sheriff Deputies. The deputies waited outside McCarthey's residence to see if appellant returned to her house. McCarthey's parents exited the residence and asked the deputies what they were doing. The deputies explained the situation to them and McCarthey's parents paged her and informed her that two deputies were waiting for appellant at their house. Approximately thirty to forty minutes later, appellant arrived at McCarthey's house. Thereafter, Officer Fetterman arrived at McCarthey's house and transported appellant to the police station where he was charged with aggravated menacing. After entering a plea of not guilty at his arraignment on May 8, 2000, this matter proceeded to trial on August 10, 2000. Following deliberations, the jury found appellant guilty. The trial court sentenced appellant to one hundred eighty days in jail, with all but sixty days suspended on condition of his good behavior for two years. The trial court also ordered appellant to comply with the Intercede program, have no contact with the victims in this case and pay $100 plus court costs. Appellant timely filed a notice of appeal. However, we remanded this matter to the trial court for the court to rule on appellant's motion for new trial he filed prior to filing his notice of appeal. On September 22, 2000, the trial court overruled appellant's motion. Thereafter, appellant filed his brief in this matter and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S/APPELLANT'S MOTION FOR ACQUITTAL AND/OR THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR, OVER OBJECTION, TO REFER DURING CLOSING ARGUMENT TO A NON-EXISTENT "ARGUMENT" BETWEEN DEFENDANT/APPELLANT AND THE ALLEGED VICTIM.
 III. THE TRIAL COURT ERRED IN OVERRULING, UPON REMAND, DEFENDANT'S/APPELLANT'S MOTION FOR NEW TRIAL.
 I
Appellant contends, in his First Assignment of Error, that the trial court erred when it overruled his motion for acquittal. In the alternative, appellant maintains the jury's verdict is against the manifest weight of the evidence. We disagree with both arguments. Crim.R. 29(A) addresses motions for acquittal and provides: (A) Motion for judgment of acquittal
The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.
The Ohio Supreme Court held in the case of State v. Bridgeman (1978),55 Ohio St.2d 261 that "* * * a trial court should overrule a Crim.R. 29(A) motion if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. In support of his first argument under this assignment of error, appellant contends the trial court should have granted his motion for acquittal pursuant to the case of State v. Fields (1992), 84 Ohio App.3d 423. In Fields, the defendant, a police officer, discovered three boys fishing on property where defendant boarded her horses for over eighteen years. Id. at 425. The defendant initially encountered one of the boys and learned that he had two companions with him. Id. Following this encounter, defendant returned to her vehicle and retrieved a gun from the trunk. Id. Thereafter, defendant found the other two boys and ejected them from the property. Id. The defendant was subsequently charged and convicted of aggravated menacing. Id. On appeal, the Twelfth District Court of Appeals reversed defendant's conviction for aggravated menacing finding said conviction against the manifest weight and sufficiency of the evidence. Id. at 428. In reaching this conclusion, the court of appeals stated: The trial testimony of * * * [the victims] establishes that although appellant had a gun with her * * * she did not verbally threaten the boys or directly point the gun at them. * * * Although appellant initially waved the gun around, she held the gun at her side thereafter, including the time she was with * * * [two of the victims.]. * * * [One of the victims] also testified that appellant was `pretty nice' to him for most of the encounter. We find appellant's actions did not constitute a threat.
* * *
Also, appellant testified that the property had been vandalized previously, the house had been broken into, and other trespassers had been on the property. * * * Therefore, appellant, as a trained police officer, responded to this situation with a technique which was cautious and understandable.
* * *
Although we are always reluctant to reverse a judgment as being against the manifest weight of the evidence, we must do so based upon the record before this court, which shows that there was no verbal or physical threat made by appellant which would cause a fear of serious physical harm. Id. at 427-428.
The Fields case is distinguishable from the case sub judice. First, appellant is not a police officer and therefore, lacked the justification for carrying a gun. Second, the confrontation between appellant and the young men in this case could not be characterized as "pretty nice." Although appellant and the three young men exchanged few words, the fact that Brady had previously dated appellant's girlfriend created a situation where appellant's actions were meant to intimidate and frighten. In fact, appellant's actions did intimidate and frighten two of the young men causing them to flee the scene. Further, a witness inside the restaurant testified that she was shocked when she saw appellant remove the gun from the Blazer and that appellant appeared upset, angry and explosive. Tr. Vol. II at 263. Unlike the defendant's actions in the Fields case, appellant's physical gestures caused a fear of serious physical harm to the three young men in this case as well as a witness in the restaurant. Accordingly, we conclude the trial court properly overruled appellant's motion for acquittal. Appellant also maintains, under this assignment of error, that the jury's verdict is against the manifest weight of the evidence because the jury was confused about what conduct was lawful and what conduct was unlawful. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. Based on our review of the record in this matter, we conclude the jury's verdict is not against the manifest weight of the evidence. The trial court instructed the jury on the elements of the crime of aggravated menacing. Tr. Vol. III at 415-416. The trial court also explained to the jury that in Ohio, it is not unlawful to openly possess or to openly display a firearm. Id. at 416. Four witnesses testified as to the fear appellant caused in them when he brandished the gun and their belief that appellant would cause serious physical harm to them. Further, the trial court clearly defined the crime of aggravated menacing to the jury and the record does not establish that in resolving conflicts in the evidence, the jury lost its way thereby creating a manifest miscarriage of justice. The jury's verdict was not against the manifest weight of the evidence. Appellant's First Assignment of Error is overruled.
 I
I In his Second Assignment of Error, appellant contends the prosecutor committed misconduct, during his closing argument, when he referred to an "argument" between appellant and Brady which appellant claims never occurred. We disagree. Appellant argues the jury found the alleged argument to be a material fact in finding appellant guilty of aggravated menacing. When reviewing a prosecutor's closing argument a court must ask two questions: "whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant." State v. Smith (1984), 14 Ohio St.3d 13, 14. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157. We do not find that the prosecutor's reference to an argument between appellant and Brady was improper and prejudicially affected appellant's substantial rights. The prosecutor's representation of the confrontation between Brady and appellant as an "argument" is a fair interpretation of the encounter. Testimony presented at trial indicated that appellant looked at Brady in an antagonistic manner and Brady responded to appellant by asking him "what the fuck are you staring at?" Further, the trial court instructed the jury, following one of appellant's objections, that the evidence did not include the complaint, the opening statements or the closing arguments of counsel. Tr. Vol. III at 414. The trial court also explained to the jury that the opening statements and closing arguments are designed to assist the jury but are not evidence in the case. Id. Based on the testimony of the four witnesses that observed appellant's conduct, we conclude the prosecutor's characterization of the confrontation between appellant and Brady as an "argument" was not improper and therefore, did not prejudicially affect appellant's substantial rights. Appellant's Second Assignment of Error is overruled.
 III
Appellant maintains, in his Third Assignment of Error, that the trial court erred when it overruled his motion for new trial. We disagree. Appellant requested a new trial on four grounds: prosecutorial misconduct, Officer Fetterman's failure to timely read appellant his Miranda rights, lack of evidence sufficient to sustain a conviction, and the unconstitutionality of R.C. 2903.21. We previously addressed the issue of prosecutorial misconduct, in appellant's Second Assignment of Error, and will not do so in this assignment of error. A. Failure to Read Miranda Rights Appellant did not file a motion to suppress in this matter and appellant claims that only after the trial commenced did he discover that Officer Fetterman did not properly read him his Miranda rights. Failure to file a motion to suppress within the time specified by Crim.R. 12(C) waives any objection to admission of the evidence or statement. See Crim.R. 12(G) and State v. Wade (1978), 53 Ohio St.2d 182, paragraph three of the syllabus, vacated on other grounds (1978),438 U.S. 911. Thus, appellant has waived this issue for purposes of appellate review. B. Sufficiency of the Evidence Appellant next claims, under this assignment of error, that his conviction for aggravated menacing is against the sufficiency of the evidence. On review for sufficiency, the reviewing court is to examine the evidence at trial and determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. As previously noted, we have reviewed the evidence presented at trial and we conclude that the evidence, if believed by the jury, is sufficient to support a conviction for aggravated menacing. C. Constitutionality of R.C. 2903.21 In his final argument, appellant contends R.C. 2903.21 is unconstitutional because it is vague and overbroad. Appellant also argues that at a minimum, it is unconstitutional as applied to him. The record indicates that appellant did not raise the constitutionality of this statute at the trial court level. In the case of State v. Awan (1986), 22 Ohio St.3d 120, the Ohio Supreme Court held that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." Id. at syllabus. Based on our disposition of the above arguments, we conclude the trial court properly denied appellant's motion for a new trial. Appellant's Third Assignment of Error is overruled.
For the foregoing reasons, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.
Wise, J. Edwards, P.J., and Gwin, J., concur.