OPINION
Defendant-appellant, Keith Larison, appeals his convictions in the Warren County Court of Common Pleas for rape. We affirm the decision of the trial court.
This case arose when Lisa S., the daughter of appellant's girlfriend, reported that appellant was sexually abusing her in her home. Lisa was only eleven years old when the abuse began, while appellant was forty-one years old. According to Lisa, appellant held her down on a bed and removed her pants. Appellant fondled her breasts and inserted his fingers into her vagina, despite her complaints that he was hurting her. Lisa also reported that appellant "put his mouth on her vagina" on "a lot" of other occasions. Lisa did not immediately report the sexual abuse because appellant threatened to hurt her or her mother if she told anyone.
Appellant was indicted with two counts of rape and one count of felonious sexual penetration. Appellant was tried before a jury. The trial court dismissed the charge of felonious sexual penetration since the statute upon which the charge was based had been repealed by the legislature.
At trial, Lisa described the incidents of abuse. She testified that appellant's attitude toward her changed after the abuse began. Appellant began being "nicer" to Lisa, "treating her better" and letting "her do more things." Appellant allowed her to drink alcohol, smoke cigarettes and drive illegally. He even took her on trips with him.
Lisa's mother, Patricia, also testified at trial. Patricia stated she often left Lisa alone with appellant because she worked night shift at her job. Patricia witnessed appellant in Lisa's room on one occasion wearing only a towel. When Patricia learned of the abuse, she confronted appellant. Appellant did not directly deny the allegations, responding "Well, what do you think?" Patricia described her daughter as well-behaved before appellant moved in with them, noting that Lisa even received a "Student of the Month" award the month prior to his arrival. However, by contrast, Lisa became "unruly" at home and began to have difficulties at school after appellant moved in with them.
The state's final witness was Joey Taylor. Taylor met appellant while they both were in jail. According to Taylor, appellant offered him $100 to falsely testify that Lisa had told him she was lying about the abuse. Appellant also wrote a statement for Taylor to copy in his own handwriting, which indicated Lisa told him she was lying about the allegations. Taylor testified that he had not seen or met Lisa prior to the trial.
Appellant testified in his own defense and denied the allegations. He characterized his relationship with Lisa as a "thunderstorm." Appellant stated that Lisa did not like to do chores and follow rules. He felt like Lisa hated and resented him. Appellant testified that Lisa concocted the allegations of sexual abuse to get herself out of trouble. With regard to Taylor, appellant stated that Taylor approached him in jail and claimed to know Lisa. He denied asking Taylor to lie for him.
Angela Martin also testified on behalf of appellant. Appellant is her half-brother's father. Martin stated she knew Lisa and often saw her in Middletown while participating in activities such as swimming, skating or dancing. Martin testified that she and Lisa were swimming in August 1998 at the Parkway Inn Motel in Middletown. According to Martin, Lisa approached her and stated that she hated appellant, she did not want him in her home, and she fabricated the stories of sexual abuse to get appellant away from her mother.
The state presented three rebuttal witnesses. First, Alan Duning, whom is in charge of Lisa's therapy and treatment, testified that Lisa was in in-patient therapy and was prohibited from visiting with friends during the time when Martin alleged Lisa confided in her. Second, Lisa testified that she had never seen Martin, much less told her or anyone else her age about the sexual abuse because "it was embarrassing." Finally, appellant's daughter, Jamie Robinson, testified that Lisa never talked to her about her relationship with appellant.
The jury found appellant guilty of both counts of rape. Upon request of defense counsel, the trial court polled the jurors. Each juror affirmed that he or she had joined in the verdicts. Appellant appeals his convictions and raises two assignments of error for review.
Assignment of Error No. 1:
 THE MISCONDUCT OF THE PROSECUTING ATTORNEY IN THE QUESTIONING HER REBUTTAL WITNESS AND HER REMARKS IN CLOSING ARGUMENT DEPRIVED APPELLANT OF A FAIR TRIAL.
In his first assignment of error, appellant argues that he was deprived of a fair trial because of prosecutorial misconduct. Specifically, appellant argues that the prosecutor engaged in two instances of misconduct. First, appellant contends that the prosecutor attempted to elicit testimony that was improper for rebuttal, leading to seven objections by defense counsel that were sustained by the trial court. Second, appellant maintains that the prosecutor, in closing argument, vouched for the credibility of the state's witnesses.
The test for prosecutorial misconduct is whether the remarks made by the prosecutor were improper and, if so, whether the remarks prejudicially affected substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 14. In making this determination, an appellate court should consider (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant. State v. Braxton (1995), 102 Ohio App.3d 28, 41. Where the trial court has sustained an objection and provided a curative instruction to the jury, an appellate court must presume the jury followed the court's instructions. See, e.g., State v. Raglin (1998),83 Ohio St.3d 253, 264.
A prosecutor has a duty to avoid making comments deliberately aimed at misleading the jury and to refrain from discussing matters not supported by admissible evidence. State v. Lott (1990) 51 Ohio St.3d 160, 166. However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Hill (1996),75 Ohio St.3d 195, 204. "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced of counsel are occasionally carried away by this temptation." State v. Maurer (1984), 15 Ohio St.3d 239, 267.
In the specific context of closing arguments, as with any other prosecutorial remarks alleged to be improper, closing arguments must be viewed in their entirety to determine whether the disputed remarks were unfairly prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157. In reviewing closing arguments, an appellate court must remember that both the defense and the prosecution are afforded wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." Lott at 165.
As to each of the rebuttal questions which appellant alleges were improper, the court sustained a timely objection and instructed the jury to disregard the questions and answers. The use of improper questions was not so pervasive or prejudicial to have denied appellant a fair trial.
In addition, we cannot say the isolated comment made by the prosecutor during closing argument that appellant alleges to be improper deprived him of a fair trial. During closing argument, counsel for appellant stated:
 You heard Joey Taylor testify. You read this letter, tell me who it sounds like. * * * Joey Taylor wrote this letter. This letter is the truth. And then he's 18 years old, he's a young man. He's got his whole life ahead of him. He saw a way to try to help himself, to try to get out. So he changes his story and comes in and starts saying we told him to lie.
 No, we didn't tell him to lie. The letter is the truth.
The prosecutor responded:
 Now the Defendant says Joey Taylor came in here and lied. Ladies and gentleman, you heard Joey Taylor. We did not know about Joey Taylor until the Defendant disclosed his name. We didn't go looking for somebody to come in here and tell a lie. We didn't go promising people things to come in here and tell a lie. We can't do that. I'm obligated to present witnesses that I believe are telling you the truth.
Defense counsel objected to the prosecutor's statement. The trial court sustained the objection. Then the trial court reminded the prosecutor to only comment on the evidence and instructed the jury to disregard the prosecutor's statement.
While the statement regarding the likely truthfulness of the prosecution's witnesses was improper, it was brief and did not permeate the prosecution's closing argument. When the statement is read in context of the entire trial, it is evident that the prosecutor was inartfully attempting to rebut the defendant's theory that Taylor, either on his own or at the suggestion of the prosecution, fabricated his story to gain favorable treatment in his own criminal prosecution. When the defendant objected to the statement, the trial court immediately sustained the objection and instructed the jury to disregard it. Moreover, throughout the closing argument, the prosecutor emphasized that that it was up to the jury to decide which witnesses were credible. Therefore, we conclude that the statement did not prejudicially deprive appellant of a fair trial.
After reviewing the entire record, we cannot say the outcome would have changed if the prosecutor had not asked any allegedly improper questions or made any prejudicial statements. In each instance where the prosecutor made improper statements, appellant objected and the trial court swiftly sustained the objection and provided an admonition to the jury where necessary. The evidence of the rapes was not the statements of the prosecutor, but the testimony of the state' witnesses. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE VERDICT OF THE JURY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his second assignment of error, appellant argues that his convictions for rape were against the manifest weight of the evidence presented at trial.
An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. Statev. Thompkins (1997), 78 Ohio St.3d 380, 389. The Ohio Supreme Court has summarized the standard for reversal based upon manifest weight of the evidence as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
The jury convicted appellant of rape in violation of R.C.2907.01(A)(1)(b), which provides:
 (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Sexual conduct includes vaginal intercourse between a male and female; anal intercourse, fellatio, cunnilingus and the insertion, however slight, of any part of the body or any object into the vaginal or anal cavity of another without the privilege to do so. R.C. 2901.01(A).
The state presented Lisa's testimony that appellant performed cunnilingus upon her "a lot." Lisa's mother, Patricia, testified that she caught appellant with Lisa wearing only a towel. When Patricia confronted appellant with Lisa's accusations, appellant did not directly deny them. Patricia also attested to a dramatic change in Lisa's behavior after appellant moved in with them. Joey Taylor testified that appellant offered to pay him to falsely testify on appellant's behalf.
In contrast to the state's evidence, appellant testified in his own defense and denied the allegations of sexual conduct with Lisa. Appellant denied asking Taylor to lie for him and claimed Taylor approached him in jail, claiming to know Lisa. Angela Martin testified on behalf of appellant, alleging that Lisa confessed to her that she fabricated the allegations of sexual abuse to get appellant away from her mother.
On rebuttal, Alan Duning testified that Lisa was participating in in-patient therapy during the time in which Martin claimed Lisa confided in her. Lisa also testified that she had never met Martin or told her about the sexual abuse.
Considering all of the testimonial evidence at trial, we do not disagree with the jury's resolution of the conflicting testimony. The jury was in the best position to fully assess the credibility of the witnesses. We conclude that the jury did not lose its way or create a fundamental miscarriage of justice by finding appellant guilty of rape. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.