OPINION
Defendant, Damean Hooper, appeals from his conviction and sentence for murder with a firearm specification, carrying concealed weapons, and having weapons while under disability.
After an argument with his girlfriend, Carmen Norvell, Stephen Harris stayed out all night on February 19, 1999, and did not come home. The next day, February 20, 1999, Norvell paged Harris because she wanted to know where he had been and wished to exchange cars with him. Harris answered the page and agreed to meet Norvell at the corner of Lexington and Catalpa in Dayton.
Norvell arrived first, at around 3:00 p.m., and parked on Lexington next to the curb. Harris then pulled in behind Norvell and parked. Harris got into Norvell's vehicle and they began to talk. Shortly thereafter, Defendant pulled up alongside Norvell in a black sport utility vehicle.
Defendant is a first cousin to Norvell's children. Norvell got out of her vehicle and approached the open passenger window on Defendant's vehicle to ask what Defendant wanted. Defendant indicated that he wanted to talk to Harris. Harris then approached the passenger window of Defendant's vehicle.
An argument quickly developed between Harris and Defendant. When Norvell intervened and asked Defendant what was going on, Defendant said he had heard that Harris and his friends had beat up Defendant's uncle. Defendant threatened to harm Harris if he found out Harris was involved. Defendant then showed Norvell the butt end of a gun he had hidden underneath a coat on the center console of his vehicle. Norvell tried to calm both men down, and she told Harris to give up the argument because Defendant had a gun. Harris continued to argue with Defendant, however, and Defendant continued to threaten Harris.
Defendant backed up the SUV he was driving until the open passenger window was directly across from Harris, who by then was standing on the sidewalk. While the two men were calling each other names and issuing threats, Harris challenged Defendant by throwing up his hands and telling Defendant to go ahead and shoot him. Defendant then fired three shots at Harris from the open passenger window. Harris fell to the ground. Defendant then backed his SUV in reverse, raised himself up off the seat, and fired two more shots out the window at Harris as he lay motionless on the ground. Defendant yelled, "I told you I would kill you," and then sped away down Lexington. Norvell ran to a nearby home and called 911.
Helene Thomas, a neighborhood resident who was walking home from the store with her son at the time, heard two men arguing, heard gunshots, and then saw Harris turn away from the street as a black SUV sped off down Lexington. Another resident, Arnetta Roebuck, heard the gunshots and observed the black SUV speeding off Eastbound down Lexington. She also observed Harris lying on the ground, and an hysterical Norvell beside him.
Harris died at Grandview Hospital soon after as a result of his gunshot wounds. An autopsy revealed that one bullet had entered the middle of Harris' back, struck his spine, perforated his left lung and heart, and exited his chest. This shot caused massive internal bleeding and reduced Harris' blood pressure to zero within seconds. A second bullet entered Harris' lower back and lodged in his pelvis.
Defendant was apprehended in Las Vegas, Nevada, eight months after this shooting. Neither the gun used nor the black SUV were ever found.
Defendant was indicted on two counts of murder, one in violation of R.C. 2903.02(A) and the other in violation of R.C. 2903.02(B). Each count carried a three year firearm specification per R.C. 2941.145, and a five year specification per R.C. 2941.146. Defendant was also indicted on one count of having weapons while under disability, R.C. 2923.13(A)(3), and one count of carrying concealed weapons, R.C. 2923.12(A). Defendant subsequently waived his right to a jury trial on the weapons under disability charge only, electing to try that offense to the court in order to avoid the jury's learning of his three previous convictions.
Defendant was found guilty following a jury trial of both counts of murder, all firearm specifications, and carrying concealed weapons. The trial court separately found Defendant guilty of having weapons while under disability. At sentencing, the trial court merged the two counts of murder and sentenced Defendant to one term of fifteen years to life. The court also merged all firearm specifications into one five year term to be served consecutively. The trial court sentenced Defendant to eighteen months on the carrying concealed weapons charge, to be served concurrent with the other sentences. The trial court sentenced Defendant to one year imprisonment for having weapons while under disability, consecutive to the other sentences, for a total aggregate sentence of twenty-one years to life.
Defendant has timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY UNDULY RESTRICTING THE CROSS EXAMINATION OF THE ONLY EYEWITNESS IN THE CASE.
Defendant argues that the trial court committed prejudicial error in not allowing him to impeach the credibility of the State's sole eyewitness to this shooting, Carmen Norvell.
During Defendant's cross-examination of Norvell, the trial court sustained objections by the State to attempts by the defense to question Norvell about whether she had previously used a gun to shoot someone. Norvell's previous conduct in shooting someone had resulted in her conviction for negligent assault, which is a misdemeanor offense that does not involve any dishonesty or false statement. Thus, pursuant to Evid.R. 609(A), Norvell's previous misdemeanor conviction was not admissible to impeach her credibility.
We further note that while Evid.R. 608(B) does not permit specific instances of the conduct of a witness for the purpose of attacking the witness' character for truthfulness to be proved by extrinsic evidence, such conduct may be inquired into on cross-examination of the witness if, in the discretion of the court, the conduct is clearly probative of truthfulness.
In this case the trial court concluded, and we agree, that Norvell's previous conduct in shooting someone, though probative of a propensity for violence, is not probative of her character for truthfulness. Thus, the requirements of Evid.R. 608(B) have not been satisfied. The trial court did allow the defense to question Norvell about how it is that she is sufficiently familiar with guns to describe the gun used in this shooting as a nine millimeter or three eighty caliber semi-automatic. No error, much less an abuse of discretion by the trial court, has been demonstrated.
The defense also asked Norvell during cross-examination if she had ever been put in the hospital at the hands of the deceased, Stephen Harris. Norvell answered "no." In order to impeach Norvell's credibility on that point, the defense asked Norvell a question which implied that there were hospital records that would contradict her on that point. The State objected, and the trial court sustained the objection.
While Defendant was entitled to impeach Norvell by showing bias, prejudice or motive to misrepresent, per Evid.R. 616, Defendant was confined in his cross-examination to Norvell's denial of the fact that this question propounded. Defendant could have offered extrinsic evidence, the hospital records, on rebuttal to contradict Norvell's testimony and impeach her credibility regarding whether Harris had previously put her in the hospital. Evid.R. 616(C). However, Defendant conceded that he had no hospital records to offer. No error or abuse of discretion on the part of the trial court has been demonstrated.
The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 THE PROSECUTOR ENGAGED IN UNFAIR FINAL ARGUMENT AND THEREBY DENIED APPELLANT A FAIR TRIAL.
In this assignment of error Defendant complains of prosecutorial misconduct during the State's rebuttal closing argument.
During closing argument defense counsel argued that the way Harris fell after being shot and his position on the ground was inconsistent with both the eyewitness account of how the victim was standing when he was shot and the autopsy findings that the victim was shot in the back. During rebuttal closing, the prosecutor called this argument by the defense "smoke in (sic) mirrors." Defendant's objection was overruled by the trial court. Defendant now argues that the prosecutor's comment was improper and deprived him of a fair trial.
The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160. Prosecutorial misconduct does not warrant a reversal unless the conduct deprived the defendant of a fair trial. State v. Apanovitch (1987),33 Ohio St.3d 19; State v. Keenan (1993), 66 Ohio St.3d 401.
In State v. Treesh (2001), 90 Ohio St.3d 460, 466, the Ohio Supreme Court stated:
 We have previously held that the prosecution is entitled to a certain degree of latitude in summation. State v. Grant (1993), 67 Ohio St.3d 456, 482, 620 N.E.2d 50, 68; State v. Liberatore (1982), 69 Ohio St.2d 583, 589, 23 O.O.3d 489, 493, 433 N.E.2d 561, 566. The prosecutor may draw reasonable inferences during closing argument. State v. Smith (1997), 80 Ohio St.3d 89, 111, 684 N.e.2d 668, 689. We view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157, 17 O.O.3d 92, 97, 407 N.E.2d 1268, 1273.
The prosecutor did not characterize the defense argument as "lies," "a made-up story," or otherwise insinuate that defense counsel had suborned perjury by manufacturing and fashioning lies to be presented in court. Compare: State v. Smith (1984), 14 Ohio St.3d 13; State v. Roberts (2000), 139 Ohio App.3d 757. The prosecutor called the defense argument regarding how the victim fell to the ground after being shot "smoke and mirrors" in an effort to point out to the jury that the defense was attempting to divert its attention from the real issue in this case, which was whether he was the person who shot Stephen Harris. In making this brief isolated comment, the prosecutor attempted to refocus the jury on the central issue in this case.
Under these circumstances the remark does not constitute prejudicial error. See: State v. Flemming (Sept. 5, 1996), Cuyahoga App. No. 68664, unreported.
However, we strongly caution counsel against using terms such as "smokescreen" or "smoke and mirrors" too loosely. If counsel wish to argue to the jury that an adversary has attempted to divert the jury's attention away from the critical issues in the case, that point can and should be made directly, without resorting to terms such as "smokescreen" or "smoke and mirrors." Such terms are akin to "purely made up stories" and "lies," and have been interpreted by courts as insinuating that defense counsel is suborning perjury by manufacturing, conceiving and fashioning lies. Such comments can constitute prejudicial error. See: State v. Roberts (2000), 139 Ohio App.3d 757; State v. Braxton (1995),102 Ohio App.3d 28; State v. Smith, supra.
The defense told the jury during closing argument that, contrary to her trial testimony, Carmen Norvell did not tell police when they interviewed her just hours after Harris was shot that when he shot Harris and Harris fell, Defendant backed up his SUV and then raised himself up off the seat so he could fire additional shots at Harris as he lay on the ground. During rebuttal closing the prosecutor addressed that claim, telling the jury that "it is insulting to the State of Ohio and to me as the prosecutor that evidence and testimony is fabricated to fit the facts that we are left with." (T. 340, 341). The Defendant objected, but the court never ruled on the objection.
Evid.R. 607(A) states, inter alia:
 The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.
The rule thus acknowledges impeachment by reference to prior inconsistent statements, so long as it is by an adverse party. The rule imposes no limitation on when the "attack" is permitted. A party is not limited to making the attack during cross-examination. Neither is a party precluded from attacking the credibility of an adverse witness in closing argument when he didn't do so in cross-examination.
The finer distinctions of the rules of evidence can become lost when counsel relies instead on swagger and braggadocio. We have previously cautioned counsel against making their own personal integrity or competence an issue for the jury to consider.State v. Golson (Mar. 9, 2001), Montgomery App. No. 17707, unreported. An attack on the weight of evidence is not an attack on the attorney who offered it. Protestations that it amounts to a personal affront violate the principle of professional detachment. They're also probably embarrassing for the jury to hear.
A review of this record reveals that the defense in its closing argument did not accuse the prosecutor of fabricating evidence in the form of Norvell's testimony. To the contrary, the defense argued that Norvell's trial testimony was inconsistent with the wound path the coroner observed. That was a proper and permissible claim.
Nevertheless, the prosecutor's brief, isolated remark, viewed in the context of the State's closing argument as a whole, was clearly not sufficient to deprive Defendant of a fair trial.
The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 THE TRIAL COURT COMMITTED PLAIN ERROR IN GIVING THE JURY A FORSEEABILITY (SIC) INSTRUCTION.
Defendant argues that an instruction on "foreseeability" that the court included in its charge on causation relative to the offense of murder was prejudicial error because it undercut the mens rea requirement of a purposeful intent to cause death. See: State v. Jacks (1989),63 Ohio App.3d 200.
At the outset, we note that Defendant failed to object to the trial court's jury instructions. Per Crim.R. 30(A), that failure to object waives all error in the instructions except "plain error." State v. Wickline (1990), 50 Ohio St.3d 114 . Plain error does not exist unless it can be said that but for the error the outcome of the trial clearly would have been different. State v. Long (1978), 53 Ohio St.2d 91.
In Jacks, the victim died from a blow to the head delivered by the Defendant, who was charged with murder. The court gave an instruction on specific intent. The court's instruction on "cause" included a foreseeability element which required the jury to consider what a "reasonably prudent person, in like and similar circumstances would have anticipated" from his act or omission in relation to the death that resulted. The appellate court held that the instruction permitted the jury to convict on a negligence standard alone, and reversed.
Here, the undisputed evidence demonstrated that the victim died from a gunshot would inflicted by his assailant from close range. The only real issue was whether Defendant was the assailant. The facts did not warrant a foreseeability instruction. However, on this record, and applying the plain error standard of review, we cannot find that giving the instruction was reversible error.
The instruction the court gave in Jacks invoked a negligence standard. The language the court used here is consistent with the "Natural Consequences" definition of cause set out in 4 Ohio Jury Instructions, Section 409.55(2). That instruction does not invoke a reasonableness standard. The court gave both that definition and the alternative definition of direct causation in paragraph (1) of that section, which defines cause as "an act or failure to act which in a natural and continuous sequence directly produces the (victim's) death, and without which it would not have occurred."
On this record, a foreseeability instruction was not warranted. However, we cannot find that also giving the instruction was prejudicial, much less plain error, especially in view of the extensive instructions on purpose/specific intent to cause death the court gave just prior to its instruction on causation. State v. Phillips (1995),74 Ohio St.3d 72; State v. Goodwin (1999), 84 Ohio St.3d 331.
The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
In order to demonstrate that he received ineffective assistance from his counsel at trial, Defendant must meet the two prong test in Strickland v. Washington (1984), 466 U.S. 688. First, Defendant must show that his counsel's performance fell below an objective standard of reasonable representation; in other words, that there was a substantial violation of counsel's essential duties to his client.
Strickland, supra; State v. Lytle (1976), 48 Ohio St.2d 291. Next, Defendant must demonstrate prejudice, by showing a reasonable probability that but for counsel's violation of his duties, the outcome of the trial would have been different. Strickland, supra; State v. Bradley (1989),42 Ohio St.3d 136. Judicial scrutiny of counsel's performance must be highly deferential. The court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id.
Defendant complains that his trial counsel performed in a deficient manner by failing to object to the trial court's jury instruction on foreseeability. As we observed in the previous assignment of error, the trial court's instruction on foreseeability in this case did not constitute prejudicial error. Thus, defense counsel did not perform in a deficient manner by failing to object to that jury instruction.
Defendant also claims that defense counsel performed deficiently by failing to request jury instructions on lesser included offense of R.C.2903.02(B), which is causing a murder in the course of committing a felony. Counsel's failure to request such instructions, however, is attributable to a reasonable tactical choice. The defense in this case was simply that Defendant Hooper was not the person who shot Stephen Harris. A request for a lesser included offense instruction would be inappropriate to that claim, and could permit the jury to convict Defendant of the lesser charge upon a compromise. No deficient performance by defense counsel has been demonstrated on this record.
The fourth assignment of error is overruled.
FIFTH ASSIGNMENT OF ERROR
 THE CONVICTIONS FOR MURDER SHOULD BE REVERSED BECAUSE IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant argues that his conviction for murder is against the manifest weight of the evidence because the sole eyewitness account of this shooting given by Carmen Norvell suggests that the deceased, Stephen Harris, was facing Defendant when Defendant shot him. The forensic evidence produced by the autopsy of Harris contradicts Norvell's account, however, and demonstrates that Harris died as a result of a gunshot that entered his back and exited his chest.
A weight of the evidence argument challenges the believability of the evidence; which of the competing inferences suggested by the conflicting evidence is more believable or persuasive. Hufnagle, supra. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983), 20 Ohio App.3d 172, 175:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the factfinder lost its way. State v. Bradley (Oct. 5, 1997), Champaign App. No. 97-CA-03, unreported.
One witness at trial, Helene Thomas, testified that as soon as she heard gunshots she looked up and saw a man in a plaid jacket, who was Harris turn his back toward Lexington Street and the black vehicle that was stopped in the street.
In resolving any conflict between the testimony of Norvell and Thomas, and the autopsy findings, it was up to the jury as the trier of facts to determine the credibility of the witnesses and the weight to be given to each witness' testimony. State v. DeHass (1967), 10 Ohio St.2d 230.
The sole issue in this case was whether Defendant was the shooter. The only eyewitness to this shooting, Carmen Norvell, identified Defendant as the perpetrator. In that regard, we note that Defendant is related to Norvell and well known to her. Thus, any mistake as to the identity of the shooter is highly improbable. In viewing as a whole the testimony given by Norvell and Thomas, we cannot say that the evidence presented in this case weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has resulted. Defendant's conviction for murder is not against the manifest weight of the evidence.
The fifth assignment of error is overruled. The judgment of the trial court will be affirmed.
 __________ GRADY, J.,
BROGAN, J. and FAIN, J., concur.