DECISION
Defendant-appellant, Gary D. Madden, was accused of sexually assaulting his teenaged daughter, April Madden, from May 1999, until August 2001. Appellant was tried and convicted by a jury on nineteen counts of rape in violation of R.C. 2907.02, nineteen counts of sexual battery in violation of R.C. 2907.03, one count of kidnapping in violation of R.C. 2905.01, and one count of domestic violence in violation of R.C. 2919.25.
April Madden testified that appellant began assaulting her in May 1999, when she was 15 and living at home with appellant, April's mother, and April's three brothers. April testified that appellant came home drunk one morning, woke her up in her bedroom, took her downstairs to a green loveseat in the living room, and forced her to perform fellatio. She testified that appellant forced her to perform fellatio on him and forced her to have anal intercourse with him on two or three additional occasions during the month of May 1999.
April testified that appellant required her to perform fellatio and anal intercourse with greater frequency. She testified that "he would do it more often by the weeks and then by the days" and that it got to the point where it was occurring "[d]aily, more than once a day." She testified that appellant eventually also required her to engage in vaginal intercourse. She testified that he threatened to hit her if she did not comply and he threatened that if she told anyone he would "turn it around" and claim that April started it. April testified that she moved in with appellant when her parents separated in May or June 2001, because appellant threatened that he would "flip around the story" and tell April's mother. When asked how many times appellant had sexually assaulted her since May 1999, April said "[i]t's uncountable."
April testified that she endured appellant's abuse until August 22, 2001, when she finally contacted the police. April testified that, on that date, appellant became angry and jealous because April told him that she liked boys her own age. According to April, appellant hit her and forced her to have vaginal intercourse in the hallway outside the upstairs bathroom. She testified that he ejaculated on the carpet. Appellant admitted that he argued with and struck April on August 22, 2001, but he testified that they fought because she thought he was being overprotective of her behavior with her friends and he thought she was being disrespectful. Appellant denied that he ever had sex with April.
After April contacted the police, she was taken to Children's Hospital. Dr. Angela Orlino, who examined April, testified that April had black and blue marks on the insides of her legs and an abrasion to the left of the clitoral hood.
Al Judy, a detective with the Franklin County Sheriff's Office, testified that he removed a carpet sample from the area where appellant allegedly ejaculated after assaulting April on August 22, 2001. Margaret Saupe, a forensic scientist from the Ohio Bureau of Criminal Identification, testified that the carpet sample tested positive for the presence of semen.
April testified that, in the months prior to August 22, 2001, appellant told her he loved her and wanted to marry her. According to April, appellant forced her to call him "Buddy" and to write him love letters, and she received love letters from him. She testified that appellant occasionally wore a condom, and he required her to take periodic pregnancy tests. April testified that appellant kept the love letters, condoms and pregnancy tests in a safe in his bedroom.
Detective Judy testified that he found a safe in appellant's room that contained love letters to and from "Buddy," condoms, and a pregnancy test. April identified the letters in the safe and testified that they were correspondence between her and appellant. Among the letters was the following, which was signed "Big Buddy" and dated March 30, 2001:
 Hi Sweet Heart how did you do in school today i was just wanting to know because I had a little bad Filling in my heart today. I did not sleep very good. babby doll I missed you very much today. Because you are the apple of my eye's the gril of my dream's the sun in my hair and flower's that keep you so sweet babby you are every thing to me I love you so much that I just want to share the rest of my life and time with you. gril I just want to share my love with you For ever Honey. Because you are so kind and Because you are so sweet. I just wished you know how much I loved you. And how much I care about you. Honey so time's my heart can't put out all the love I have for you. So sometime's you have to look into my eye's just to see how i really Fill. I worry about you babby. Honey you know I have to go to work today I know you do to But I will still keep you in my heart all night and day. I will miss you sweet heart. will that is all for now see you allway's want to be you. Love you Forever. [Sic.]
Karen Madden, appellant's wife and April's mother, testified that she was familiar with appellant's handwriting and that he had authored the letter.
 April's brother, Robbie Madden, testified that he overheard two telephone conversations between April and appellant after appellant was arrested. Robbie testified that he initially believed that April was lying about the abuse because he heard her say, "Dad, you did not do that stuff to me." Robbie further testified that, in a subsequent conversation, he overheard appellant say he was "sorry for what he's done, that he will make it up, and if he don't if nobody wants him to come around no more, we won't. He'll just get his stuff and go." According to Robbie, appellant also said that he was going to blame April, that "he was going to make things feel like it was on April's behalf instead of his." Robbie admitted that he did not want to testify and that he did not know "what's true or what's not true."
On appeal, appellant assigns the following errors:
 ASSIGNMENT OF ERROR #1: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF RAPE FOR COUNTS ELEVEN THROUGH FIFTEEN, COUNTS TWENTY-ONE THROUGH TWENTY-FIVE AND COUNTS THIRTY-ONE THROUGH THIRTY-FIVE AS SAID VERDICTS WERE BASED UPON INSUFFICIENT EVIDENCE.
 ASSIGNMENT OF ERROR #2: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF RAPE FOR COUNTS ELEVEN THROUGH FIFTEEN, COUNTS TWENTY-ONE THROUGH TWENTY-FIVE, AND COUNTS THIRTY-ONE THROUGH THIRTY-FIVE AS SAID VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR #3: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF SEXUAL BATTERY FOR [COUNTS] SIXTEEN THROUGH TWENTY, COUNTS TWENTY[-]SIX THROUGH THIRTY, AND COUNTY THIRTY-SIX TO FORTY AS SAID VERDICTS WERE BASED UPON INSUFFICIENT EVIDENCE.
 ASSIGNMENT OF ERROR #4: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF SEXUAL BATTERY FOR COUNTS SIXTEEN THROUGH TWENTY, COUNTS TWENTY-SIX THROUGH THIRTY, AND COUNTS THIRTY-SIX TO FORTY AS SAID VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR #5: APPELLANT'S RIGHT TO A FAIR TRIAL AND RIGHT TO DUE PROCESS UNDER THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WERE VIOLATED THROUGH MISCONDUCT ON THE PART OF THE PROSECUTOR DURING HER CLOSING ARGUMENTS.
 ASSIGNMENT OF ERROR #6: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF RAPE AND SEXUAL BATTERY FOR COUNTS ONE, TWO, THREE AND FOUR AS HIS CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR #7: THE COURT SUB JUDICE COMMITTED PREJUDICIAL ERROR IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHT AND RIGHT TO A FAIR TRIAL UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION WHEN IT ENTERED INTO THE RECORD THE JURY'S VERDICT FINDING APPELLANT GUILTY OF RAPE FOR COUNTS SEVEN AND EIGHT AND SEXUAL BATTERY FOR COUNTS NINE AND TEN AS HIS CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
For clarity, we address appellant's assignments of error out of order. By his fifth assignment of error, appellant contends that he was denied his constitutional rights to due process and a fair trial because the prosecutor committed misconduct during her closing statement. Specifically, appellant contends that the prosecutor improperly expressed her personal beliefs about appellant's credibility and guilt, improperly expressed her personal belief about Robbie Madden's credibility, and misstated facts.
"The test for prosecutorial misconduct * * * is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." State v. White (1998), 82 Ohio St.3d 16, 22
(1998), certiorari denied, 525 U.S. 1057. The analysis must center on the fairness of the trial, not the culpability of the prosecutor. Id. The prosecutor's conduct cannot be grounds for a new trial unless the conduct deprives the defendant of a fair trial. State v. Keenan (1993),66 Ohio St.3d 402, 405.
Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted only if the statements permeate the entire atmosphere of the trial. State v. Tumbleson (1995), 105 Ohio App.3d 693, 699. Moreover, "[i]n the tension and turmoil of a trial, both the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v. Lott (1990),51 Ohio St.3d 160, 165, certiorari denied (1990), 498 U.S. 1017. When examining the prosecutor's arguments for possible misconduct, we must review the argument as a whole, not in isolated parts, and we must examine the argument in relation to that of opposing counsel. State v. Moritz (1980), 63 Ohio St.2d 150, 157-158.
Moreover, because defense counsel did not object during the prosecutor's closing argument, we must confine our review to the plain error doctrine. See State v. Moreland (1990), 50 Ohio St.3d 58, 62. Under Crim.R. 52(B), we may address plain errors or defects affecting substantial right, although they were not brought to the attention of the trial court. Id.; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error is found where, but for the error, the outcome of the trial would have been otherwise." State v. Franklin (1991), 62 Ohio St.3d 118, 128, certiorari denied (1992), 504 U.S. 960. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Long, paragraph three of the syllabus.
Contrary to appellant's assertions, the prosecutor did not misstate facts. Appellant contends that, when April testified that she had been raped weekly or daily, she was referring to the period of time between May 1, 1999, and May 31, 1999. Accordingly, appellant argues that the prosecutor committed misconduct because she implied that April had been raped with that frequency from June 1999, until August 2001. We believe that there is evidence in the record to support the prosecutor's summation, not the scenario advanced by appellant. April expressly testified that she was assaulted three or four times in May 1999, and that, after May, the incidents occurred with greater frequency, including daily, more than once a day, and an uncountable number of occasions.
We similarly conclude that, contrary to appellant's argument, the prosecutor did not misstate Dr. Orlino's testimony. Appellant contends that the prosecutor implied that Dr. Orlino testified that the bruises and abrasion in April's genital area were evidence of a year and one-half of sexual abuse. We conclude that the prosecutor accurately portrayed Dr. Orlino's testimony and never suggested that the doctor said that the bruises and abrasions demonstrated a history of abuse.
Nor did the prosecutor commit misconduct by expressing improper personal beliefs and opinions about the credibility of appellant and Robbie Madden. Appellant argues that the prosecutor improperly stated in closing argument that appellant violated his duty to respect his daughter, betrayed her trust and confidence, and violated her body and that, by advancing this argument, the prosecutor was improperly suggesting that appellant was lying when he denied that he had sex with April. We conclude that, by these comments, the prosecutor was merely conveying the state's theory of the case.
Finally, appellant faults the prosecutor for making the following statement about Robbie Madden in her closing rebuttal argument:
 And when [Robbie Madden] was in here in front of his father, he said something he never said before, and that's what it was, mitigation. "I got to try to cut his losses. I got to try to take myself out of the situation." It was desperate. It was painful. But it was so obvious what was happening. Robbie didn't hear a conversation with April denying these conversations. He only heard his dad admit it. [Tr. at 209.]
By her comments, the prosecutor advanced an argument interpreting Madden's testimony based upon the evidence in the record. Robbie Madden testified that, although he had spoken to the prosecutor prior to trial, he had not told her that he had overheard a conversation in which April stated, "Dad, you did not do that stuff to me." He also testified that he did not know what to believe and that he did not want to testify. In the overall context of the trial, we conclude that these comments by the prosecutor in closing argument did not deprive appellant of his constitutional rights to a fair trial. We overrule appellant's fifth assignment of error.
By his remaining assignments of error, appellant contends that his convictions on the various counts of rape and sexual battery were based upon insufficient evidence and/or were against the manifest weight of the evidence.
The Ohio Supreme Court outlined the role of an appellate court presented with a sufficiency of evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime proven beyond a reasonable doubt. * * *
See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319. This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the sufficiency of evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, at 319. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. State v. Thomas (1982), 70 Ohio St.2d 79, 80.
In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387. The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, at 387.
By his first, second, third and fourth assignments of error, appellant argues that his convictions on Counts 11 through 40 were based upon insufficient evidence and were against the manifest weight of the evidence. Pursuant to those counts, appellant was convicted of five counts of rape by vaginal intercourse, five counts of sexual battery by vaginal intercourse, five counts of rape by fellatio, five counts of sexual battery by fellatio, five counts of rape by anal intercourse, and five counts of battery by anal intercourse. All of these counts were based upon appellant's alleged conduct between June 1, 1999 and August 22, 2001. Appellant argues that the record does not demonstrate that appellant repeatedly raped and sexually battered his daughter through vaginal intercourse, fellatio and anal intercourse during this timeframe. We disagree.
As an initial matter, we note that appellant failed to timely file a Crim.R. 29 motion for acquittal. He has, therefore, waived his sufficiency argument on appeal. State v. Roe (1989), 41 Ohio St.3d 18,25. We will, however, proceed under the plain error analysis, pursuant to Crim.R. 52(B), and address the substance of appellant's argument.
At trial, April testified that appellant forced her to perform fellatio on him and to have anal intercourse with him on three or four occasions in May 1999, and that the sexual abuse endured until August 22, 2001. She testified that the incidents of fellatio and anal intercourse increased after May 1999, that appellant "would do it more often by the weeks and then by the days" and that it got to the point that it was occurring "[d]aily, more than once a day." She further testified that appellant also started having vaginal intercourse with her "this year and the end of last year," and that the number of occurrences of sexual assault were "uncountable." In light of the record, including this testimony, we conclude that the evidence is sufficient to support convictions on Counts 11 through 40, and that those convictions are not against the manifest weight of the evidence. Accordingly, we overrule appellant's first, second, third and fourth assignments of error.
By his sixth assignment of error, appellant contends that his convictions on Counts 1, 2, 3 and 4 were against the manifest weight of the evidence. Pursuant to those counts, appellant was convicted of rape and sexual battery by vaginal intercourse and digital penetration on August 22, 2001. Appellant argues that Robbie Madden's testimony that he overheard April state, "Dad, you did not do that stuff to me," weighs against convictions on these counts. Appellant further argues that the state provided no conclusive medical evidence that appellant had been assaulted, there was no DNA evidence presented to demonstrate whether the semen on the carpet was from appellant, and the love letters to "Buddy" were, at best, probative of an ongoing sexual relationship between appellant and April, not of an assault on August 22, 2001.
We conclude that there was ample evidence to convict appellant on Counts 1, 2, 3 and 4. Although Robbie Madden may have provided circumstantial evidence that arguably favored appellant, he also testified that he overheard another conversation in which appellant admitted that he was sorry and had threatened to "make things feel like it was on April's behalf instead of his." April testified regarding the details of the sexual assault on August 22, 2001, and the semen on the carpet provided circumstantial evidence corroborating her version of the assault. Although Dr. Orlino could not conclude whether April had been raped on August 22, 2001, Dr. Orlino testified that April's physical condition was not inconsistent with someone who had been raped. Dr. Orlino also testified that April had bruises on the insides of her legs and an abrasion on her clitoral hood. In light of this record, we overrule appellant's sixth assignment of error.
By his seventh assignment of error, appellant contends that his convictions on Counts 7, 8, 9 and 10 were against the manifest weight of the evidence. Pursuant to those counts, appellant was convicted of rape and sexual battery by fellatio and anal intercourse in May 1999. Appellant contends that the manifest weight of the evidence favors acquittal because April told no one about the occurrences until August 2001, Dr. Orlino found no evidence that April had been raped in the past, and Robbie Madden testified that April said, "Dad, you did not do that stuff to me."
We conclude that appellant's conviction for raping and sexually battering April in May 1999, is not against the manifest weight of the evidence. April provided details about the first occurrence of sexual abuse in May 1999, and she testified that she was assaulted two or three additional times that month. The love letters, condoms, and pregnancy test further corroborate April's contention that appellant began having sex with her in 1999. We overrule appellant's seventh assignment of error.
For the foregoing reasons, appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and BROWN, JJ., concur.